**UNITED STATES of America, Plaintiff,**

v.

**ILLINOIS POLLUTION CONTROL BOARD, et al., Defendant.**

No. 97 C 7499.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 17, 1998.

Scott R. Lassar of United States, Attorney's Office, Chicago, IL, for Plaintiff.

Elizabeth M.S. Looby of Illinois, Attorney General's Office, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Acting on behalf of its Department of the Navy ("Navy"), the United States has filed this action against the Illinois Pollution Control Board ("Board"), the Illinois Environmental Protection Agency ("Illinois EPA") and R. Lavin & Son ("Lavin").[1] Navy seeks (1) a declaratory judgment that Board erred in dismissing an administrative appeal filed by Navy to obtain review of a permit that Illinois EPA had issued to Lavin and (2) an order requiring Board, which pegged that dismissal on jurisdictional grounds, to consider the merits of Navy's appeal. Navy invokes federal jurisdiction here under 28 U.S.C. § 1345 ("Section 1345").

All three defendants have filed motions (1) under Fed.R.Civ.P. ("Rule") 12(b)(1) to dismiss Navy's Complaint for lack of subject matter jurisdiction and (2) under Rule 56 to

---

1. Because this action, like the attempted challenge to state administrative proceedings taken directly in Navy's name, seeks to pull Navy's chestnuts from the fire, for the most part this opinion will also use "Navy" rather than "United States" in referring to the plaintiff here.

obtain a merits-based summary judgment.[2] In turn Navy has filed a cross-motion for summary judgment. All motions have been fully briefed. For the reasons stated in this memorandum opinion and order, defendants' motions to dismiss are denied, Navy's motion for summary judgment is denied and defendants' motions for summary judgment are granted.

*Facts*

Rules 12(b)(1) and 56 call for this Court to address the parties' motions from a dual perspective, looking first at Navy's allegations and its Rule–56–advanced facts in a manner favorable to it (with reasonable inferences drawn in its favor), and then returning the favor to defendants while considering Navy's Rule 56 motion. That exercise in mental gymnastics poses a low level of difficulty because the facts are truly not in dispute. But as the later substantive discussion will demonstrate, the simplicity in sorting out the facts is more than compensated for by the web of legal concepts to be unraveled.

Lavin is a refiner-smelter of non-ferrous metals that operates a plant in North Chicago, Illinois directly across from Navy's Naval Training Center Great Lakes ("Great Lakes"). In 1990 Lavin decided that it wanted to discharge wastewater into a stream that ran through Great Lakes before exiting into a harbor in Lake Michigan.

Discharge of pollutants into the waters of the United States is governed by the Federal Water Pollution Control Act, more familiarly known as the Clean Water Act (the "Act," 33 U.S.C. §§ 1251–1376).[3] Act § 1342(a) allows the United States Environmental Protection Agency ("EPA") to issue permits that allow private parties to discharge pollution under the National Pollutant Discharge Elimination System ("NPDES"). Act § 1342(b) also generally authorizes an individual state to establish and administer its own permit program subject to EPA approval. Illinois has created such an EPA-approved NPDES scheme in amendments to its Environmental Protection Act ("Illinois Act," 415 ILCS 5/1 to 5/58 .14[4]). Illinois EPA administers the Illinois program, and its permit decisions are subject to Board review.

In 1990 Lavin applied for a permit from Illinois EPA to discharge wastewater. On December 12, 1996 Illinois EPA issued a draft permit to Lavin, triggering a window for public comments (L.12(M) ¶ 7). On February 4, 1997 Navy responded with suggested modifications to the draft permit (*id.* ¶ 9). Nonetheless, on April 4, 1997 Illinois EPA issued Lavin's permit unaltered, and it sent Navy a letter explaining why the proposed changes had not been accepted (*id.* ¶¶ 10, 12).

Navy then filed a purported administrative appeal with Board on May 2, 1997 (*id.* ¶ 13)—an appeal that would have been timely if Navy had standing to appeal, but that would have no legal significance if such standing were lacking. Board dismissed the appeal on July 10, 1997 on the ground that it did not have jurisdiction to consider appeals from third parties (*id.* ¶ 16). Board recognized that on May 8, 1997 the Illinois General Assembly had passed Senate Bill 814 that would permit such third-party appeals, but Board concluded that it had no statutory basis to hear Navy's appeal because the Illinois Governor had not signed the bill into law (L.Ex.F).

On July 30, 1997 Senate Bill 814 was signed into law by the Governor and was codified as Illinois Act § 40(e)(1) (L.12(M) ¶ 17). On August 13, 1997 Navy filed a motion for reconsideration before Board, arguing that under the newly-enacted law Board had jurisdiction over third-party appeals and should therefore address the mer-

2. Board and Illinois EPA (collectively "Illinois defendants") submitted their motions jointly, while Lavin filed a separate set of motions. Because the legal fortunes of all three defendants are tied together, again for the most part this opinion will not differentiate among them, except that each set of submissions (including submissions under this District Court's General Rule 12(M) and (N)) is cited individually, using "L." and "I." as abbreviations.

3. Citations to the Act will take the form "Act § —," referring to the Title 33 numbering rather than to the Act's internal numbering. Citations to related federal regulations in 40 C.F.R. will take the form "Reg. § —."

4. Citations to the Illinois Act will take the form "Illinois Act § —," omitting the "415 ILCS 5/" reference.

its of Navy's claim (*id.* ¶ 18). But Board concluded that Illinois Act § 40(e)(1) was not intended to apply retroactively, so that Navy was not in a position to take advantage of the change in law (L.Ex.K). Accordingly Board denied Navy's motion for reconsideration on September 18, 1997 (L.12(M) ¶ 21). Navy then brought this action on October 24, 1997 (*id.* ¶ 23).

### Rule 12(b)(1) Motions

Defendants first urge the absence of subject matter jurisdiction over Navy's claim because Congress barred federal court review of state-issued NPDES permits when it allowed EPA to delegate administrative authority over the NPDES program to individual states. In large part defendants base that contention on this Court's holding in *Natural Resources Defense Council, Inc. v. Outboard Marine,* 702 F.Supp. 690, 693–94 (N.D.Ill. 1988) that federal courts are prohibited from reviewing any non-EPA-objected-to state-issued NPDES permit. Defendants theorize that Navy is likewise barred from bringing this suit because Illinois EPA issued Lavin's permit without objection from the EPA.

But *Outboard Marine Corp.* (and the other cases cited by defendants suggesting that federal courts lack jurisdiction to review state-issued NPDES permits) relied solely on the federal-court inapplicability of the jurisdictional provisions contained in the Act. By contrast, in this case Navy, as an agency of the United States, looks to the jurisdictional grant of Section 1345 to gain entrance to federal court:

Except as otherwise provided by Act of Congress, the district court shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.

Because *Outboard Marine* necessarily did not address the wholly independent jurisdictional hook potentially available to Navy via Section 1345, that decision cannot control here.

Defendants nevertheless contend that Navy cannot take advantage of Section 1345's broad grant of jurisdiction because the Act's jurisdictional limits carve out an exception to Section 1345. Though defendants concede that Congress did not explicitly create such an exception to Section 1345, they urge that Congress did so impliedly when it passed the Act.

▆▆▆▆ Repeal by implication is a disfavored means of statutory interpretation (*Pryner v. Tractor Supply Co.,* 109 F.3d 354, 358 (7th Cir.1997)). As *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 808, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (quotation marks and citations omitted) stated in the context of rejecting an effort to find an implied exception to Section 1345:

When there are statutes clearly defining the jurisdiction of the courts the force and effect of such provisions should not be disturbed by a mere implication flowing from subsequent legislation. In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable.

Thus defendants must show affirmatively either that Congress intended to substitute the Act's jurisdictional provisions for those of Section 1345 or that the two statutes are in irreconcilable conflict.

Just such positions were squarely rejected in *United States v. Commonwealth of Puerto Rico,* 721 F.2d 832 (1st Cir.1983). *Puerto Rico* faced the question whether Section 1345 conferred federal district court jurisdiction over an action filed by Navy seeking to set aside a decision of Puerto Rico's Environmental Quality Board ("Quality Board"). Navy had applied for a water quality certificate from Quality Board as a condition precedent to obtaining a NPDES permit from EPA to conduct offshore bombing (*id.* at 833–34). After Quality Board had rejected Navy's certification request, Navy eschewed seeking an appeal in the Puerto Rico courts and instead sought equitable and declaratory relief from Quality Board's decision in federal district court, arguing that the court had jurisdiction under Section 1345 (*id.* at 835).

On appeal Puerto Rico (on Quality Board's behalf) pointed to the enactment of Act § 1323(a):

Each department, agency, or instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any property or facility, or (2) engaged in any activity resulting, or which may result, in the discharge or runoff of pollutants ... shall be subject to, and comply with, all Federal, State, interstate, and local requirements, administrative authority, and process and sanctions respecting the control and abatement of water pollution in the same manner, and to the same extent as any nongovernmental entity including the payment of reasonable service charges.

Like defendants here, Puerto Rico argued that the cited provision had created an exception to the general applicability of Section 1345. *Puerto Rico*, 721 F.2d at 836–38 rejected that notion because neither the Act's text nor its legislative history indicated that Congress intended Act § 1323(a) to override Section 1345 within the field of water pollution. *Puerto Rico, id.* at 838–39 went on to hold that Section 1345 and Act § 1323(a) were not in irreconcilable conflict. Hence the district court was found to have Section 1345 jurisdiction to hear Navy's claim.

Defendants try to distinguish *Puerto Rico* in two ways. Neither suffices to blunt the force of that decision or its applicability to this case.

■ First defendants argue repeatedly that Navy should be treated as a private party filing a citizen suit instead of as a federal governmental agency, apparently because here Navy mounted a third-party challenge to Lavin's permit instead of being the actual permit applicant as in *Puerto Rico*. But that unsupported assertion is not only at odds with Section 1345's language (which by its terms places no limit on the capacity in which the United States or one of its agencies sues), but it also ignores Navy's valid

desire to protect public lands from the effects of wastewater runoff from private parties such as Lavin. That legitimate governmental interest suffices to give Navy standing under the rubric of Section 1345 (see *United States v. Southern Fla. Water Management Dist.*, 28 F.3d 1563, 1571–72 (11th Cir.1994)).

Second and relatedly, defendants contend that the proper inquiry here is not whether Act § 1323(a) impliedly repealed the Section 1345 jurisdictional grant (the issue in *Puerto Rico* ), but rather whether Act § 1342 created an exception to Section 1345. But that argument is also based on the flawed premise that in this case Navy was and is acting as a private citizen challenging a state permit issued pursuant to Act § 1342. Again that is simply not the case here: Act § 1323(a) required Navy to comply with Illinois regulations on standing, just as the same provision forced Navy to obtain a water certificate in *Puerto Rico.*

In sum, *Puerto Rico's* analysis of the relationship between Act § 1323(a) and Section 1345 applies to this case with full vigor. Defendants have not shown that this Court lacks subject matter jurisdiction under Section 1345.

■ There is, however, another potential jurisdictional barrier—not in terms of Navy's ability to come to the federal courts in search of relief, but rather in terms of the nature of the relief that Navy requests from this Court. Navy's Complaint sought both a declaratory judgment that Board erred in dismissing Navy's administrative appeal on jurisdictional grounds and an order requiring Board to consider the merits of Navy's claim. While Navy has not styled this action as an appeal of Board's decision that it lacked jurisdiction over third-party appeals, for all practical purposes that is precisely what Navy is seeking—for if Navy were instead to recast its lawsuit as a collateral attack on Board's decision, it would talk itself right out of court on claim preclusion grounds.[5] Thus

5. As a matter of Illinois law, decisions of administrative bodies acting in a "judicial" capacity are given preclusive effect (*Majeske v. Fraternal Order of Police,* 94 F.3d 307, 313 (7th Cir .1996)). Because Navy advanced its legal arguments be-

fore Board and, unsuccessful there, could have taken an appeal directly to the Illinois Appellate Court (Illinois Act § 41(a)) but chose not to do so, the resulting finality of Board's decision as to its own lack of jurisdiction would trigger the

viewing the current action as an effective attempt to appeal Board's decision, defendants insist that Navy cannot seek such direct review of a state administrative agency's decision in a federal district court.

■ That view of the district courts' role as not extending to such an essentially appellate function has strong intuitive and precedential support—so much so that just two years ago it persuaded our Court of Appeals in a similar (though not identical) context in *International College of Surgeons v. City of Chicago*, 91 F.3d 981 (7th Cir.1996) ("*International College I*"). But that decision was overturned by the Supreme Court in "*International College II*," —— U.S. ——, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997), which when applied to this case clears the way for Navy to bring its claim challenging Board's decision—a state administrative agency decision—into this federal court. While much of the discussion in *International College II* is devoted to addressing whether federal district courts can assume supplemental jurisdiction over state law claims that originate from state administrative determinations and involve on-the-record review, that discussion was grounded on the premise that federal district courts have original jurisdiction over federal question claims that arise from state administrative decisions. *International College II, id.* at 532 read earlier Supreme Court cases as "indicat[ing] that federal jurisdiction generally encompasses judicial review of state administrative decisions." Then, pointing out that "district courts routinely conduct deferential review pursuant to their original jurisdiction over federal questions, including on-the-record review of federal administrative actions" (*id.* at 533), the Court went on to reason that federal courts were equally capable of "precisely the same brand of review of local administrative actions" (*id.*). As a consequence there is no inherent jurisdictional problem attached to federal district court review of state administrative deci-

sions, at least with respect to federal question claims.[6]

■ Defendants argue that *International College II* is inapposite because Navy advances only state law claims here. But that contention misunderstands the basic jurisprudential concept that *any* litigation in which the United States or one of its agencies is a party presents a quintessential instance of a federal question claim or claims— just as much so as any claim coming within 28 U.S.C. § 1331. As *United States v. Richardson*, 889 F.2d 37, 39 (3d Cir.1989) teaches:

> [W]hen federal court jurisdiction is founded upon the United States being a plaintiff, the court is not obligated, as in diversity suits, to apply state law, but is free to fashion a federal rule of decision.

In other words, when a federal court presiding over an action in which the United States is a litigant opts to look to state law, it does so as a *federal* matter—as the resolution of a *federal* question. That choice as to what rules of decision to apply is a question of federal policy that "necessarily is dependent upon a variety of considerations always relevant to the specific governmental interests and to the effects upon them of applying state law" (*United States v. Little Lake Misere Land Co.*, 412 U.S. 580, 595, 93 S.Ct. 2389, 37 L.Ed.2d 187 (1973), quoting *United States v. Standard Oil Co.*, 332 U.S. 301, 309–10, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947)).

■ That having been said, however, a federal decision to borrow state law is a favored choice unless that choice would frustrate the purpose of a federal program (*United States v. California*, 655 F.2d 914, 916–17 (9th Cir.1980)). Here Navy agrees that borrowing Illinois substantive law to determine whether Illinois Act § 40(e)(1) applies retroactively does not frustrate any federal program. Moreover, because that question really turns on the existence of a property interest, state law clearly provides

---

operation of claim preclusion to bar relitigation of the same claim here (see, e.g., *Lambert v. Conrad*, 536 F.2d 1183, 1186 (7th Cir.1976)). Little wonder, then, that Navy Mem. 12–13 disclaims any collateral-attack characterization of this lawsuit.

6. *International College II, id.* 118 S.Ct. at 533 specifically declined to answer the question whether federal district courts have original jurisdiction in diversity cases over state law claims that arise from state administrative actions.

the most appropriate source of rules of decision.

Again, however, borrowing state law for that purpose does not transform this action into one presenting only a state law claim. Rather, Navy's suit inherently continues to present a claim under federal law—state law simply supplies the substance of that federal law (*United States v. Vitek Supply Corp.*, No. 97–4151 F.3d 580, 585 (7th Cir.1998)). And so because Navy's action does present a claim under federal law, *International College II* confirms that this Court has jurisdiction to review Board's administrative decision.

Next defendants argue that Navy's Complaint must be dismissed for lack of jurisdiction under the *Rooker–Feldman* doctrine (*Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)). Under that doctrine federal courts lack the power to exercise appellate review over state court decisions (*Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir.1996)). Defendants claim that similar deference must be given to Board's decision that it lacked subject matter jurisdiction over Navy's claim.

■ But the *Rooker–Feldman* doctrine does not apply to state administrative judgments (*Van Harken v. City of Chicago*, 103 F.3d 1346, 1349 (7th Cir.1997)). *Van Harken, id.* observes that "countless cases" allow parties who lose in state administrative proceedings to seek relief in federal court, particularly in the context of 42 U.S.C. § 1983, and that "[i]f the *Rooker–Feldman* doctrine is to be extended to administrative judgments, it will have to be done by the Court that created it." Despite defendants' earnest attempts to state similarities between Board proceedings and adjudicatory procedures, Board is plainly an administrative agency and not an Illinois court. This Court will not tread a path on which neither the Supreme Court nor our Court of Appeals has set foot.

*Rooker–Feldman* poses no bar to subject matter jurisdiction either.

Defendants' final non-merits-related contention is non-jurisdictional—an argument that this Court should abstain from exercising jurisdiction over Navy's claim under the *Burford* abstention doctrine (*Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943)). Such discretionary abstentions are rarely justified, for the controlling cases regularly reaffirm (see, e.g., *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996)) that federal district courts have a strict ("virtually unflagging") duty to exercise the jurisdiction conferred upon them by Congress. Nonetheless, defendants insist that Navy's claim presents one of those rare occasions for *Burford* abstention.[7]

■ On that score, last month's opinion of our Court of Appeals in *International College III*, 153 F.3d 356, 361 (7th Cir.1998) (quotation marks and citations omitted), issued on remand from the Supreme Court's decision in *International College II*, has reconfirmed that *Burford* abstention is appropriate in only two situations:

> First, federal courts should abstain from deciding difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar. We should also abstain from the exercise of federal review that would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

Although defendants do not specify which branch of the *Burford* doctrine they call upon, that lapse is immaterial because abstention is impermissible under either prong.

As a threshold matter, the first type of *Burford* abstention is not literally involved because, as already decided, federal rules of decision govern Section 1345 claims. While as said earlier it makes most sense to borrow Illinois law (rather than to fashion federal

---

7. "Abstention" is a bizarre notion where, as here, there is no possibility of state court review of Board's action: After all, Navy never appealed to an Illinois court, and the time for such an appeal has expired. If Navy were to file a new lawsuit in the state courts, it would surely seem to be barred by preclusion principles. That prospect provides an additional reason beyond the issues addressed below that makes *Burford* "abstention" inappropriate.

common law) to resolve Navy's claim, that reliance does not transform this lawsuit into a state law action.

■ That distinction might perhaps be viewed as overtechnical if the state law to be borrowed involved the same type of complex administrative scheme that led the Supreme Court to announce the doctrine in *Burford* itself. But that is not at all the case: Navy's action presents no "difficult question of state law bearing on policy problems of substantial public import." On the contrary, this case presents the entirely straightforward legal issue of whether Illinois Act § 40(e)(1) applies retroactively. In that respect both sides agree that *First of Am. Trust Co. v. Armstead,* 171 Ill.2d 282, 215 Ill.Dec. 639, 664 N.E.2d 36 (1996) controls that question— they simply disagree as to how *Armstead* applies in this context. That issue is a far cry from the paradigmatic state law issue presented in *Burford,* 319 U.S. at 318, 63 S.Ct. 1098 (quoting *Railroad Comm'n v. Rowan & Nichols Oil Co.,* 310 U.S. 573, 579, 60 S.Ct. 1021, 84 L.Ed. 1368 (1940)), in which:

> The order under consideration is part of the general regulatory system devised for the conservation of oil and gas in Texas, an aspect of "as thorny a problem as has challenged the ingenuity and wisdom of legislatures."

Defendants fare no better under the second prong of the *Burford* doctrine. *International College III* at 362–63, quoting *Property & Cas. Ins. Ltd. v. Central Nat'l Ins. Co.,* 936 F.2d 319, 323 (7th Cir.1991), sets out the two essential elements that must exist to justify abstention under that alternative:

> First, and most obvious, the state must offer some forum in which claims may be litigated.... Second, that forum must be special—it must stand in a special relationship of technical oversight or concentrated review to the evaluation of those claims. The ability to point to a specialized proceeding is a prerequisite of, not a factor in, the second type of *Burford* abstention.

There simply is no such Illinois "special forum" for "technical oversight" or "concentrated review" of NPDES permit disputes. Instead Illinois Act § 41(d) channels each appeal from Board action directly to the Illinois Appellate Court in the judicial district in which the cause of action arose. That arrangement is really the antithesis of the creation of a forum with special expertise. Indeed, Board's factual determinations are upheld unless they are against the manifest weight of the evidence (*Marathon Oil Co. v. EPA,* 242 Ill.App.3d 200, 201, 182 Ill.Dec. 920, 610 N.E.2d 789, 790 (5th Dist.1993)). Such deferential review further negates any notion of specialized expertise in the Illinois Appellate Courts (accord, *International College III,* at 363).

In summary, defendants fail to satisfy either branch of *Burford* abstention doctrine. That final failure means they have struck out on every aspect of their motions to dismiss. Those motions are denied.

### Rule 56 Motions

■ But Navy has dodged all of those dismissal bullets only to be felled on the merits of its claim, in which it challenges Board's determination that it lacked jurisdiction to hear Navy's appeal. Navy's position is that Illinois Act § 40(e)(1), which was enacted more than 35 days after the issuance of Lavin's permit to allow third-party appeals (such appeals were disallowed before that enactment), applies retroactively and provides Board with jurisdiction to consider the merits of its claims. As already stated, the litigants have agreed—and this Court concurs—that Navy's assertion is best resolved by borrowing from Illinois law, because that choice frustrates no federal program and because state law is clearly best suited to resolving what is at heart a question of state property law.

■ In that respect the 1996 Illinois Supreme Court decision in *Armstead,* on which both sides must perforce rely, provides the definitive statement of the approach that Illinois courts must follow when deciding whether to apply a legislative change while a case is pending. *Armstead,* 171 Ill.2d at 289, 215 Ill.Dec. 639, 664 N.E.2d at 39–40 concluded that Illinois courts are to apply the law that applies by its terms at the time of appeal *unless* doing so interferes with a vested right. *Armstead, id.* at 290, 215 Ill.Dec. 639,

664 N.E.2d at 40 conceded some difficulty in defining precisely when a litigant possesses a vested right barring retroactive application of a statute, but it teaches that "a vested right is a complete and unconditional demand or exemption that may be equated with a property interest." Hence Board was obligated to apply Illinois Act § 40(e)(1) to Navy's motion for reconsideration *unless* doing so interfered with the equivalent of a property interest under Illinois law.

As persuasive as Navy's arguments have proved on the often abstruse questions that have occupied the bulk of this opinion, it is difficult to overstate just how empty its position turns out to be once the focus shifts to the merits. It cannot be gainsaid that Lavin's permit is a classic example of a property interest—granting the right to discharge wastewater into a specified stream—and that the interest became vested *before* the enactment of Illinois Act § 40(e)(1)—if not on the permit's actual issuance date of April 4, 1997, then surely 36 days later, on May 10, 1997.[8] Under the law in effect on April 4, only two entities (other than Lavin itself), Illinois EPA and EPA, could challenge the terms of the permit, and then only for reasons delineated by statute (see Act § 1342(b)(1)(C)). And 35 days later (on May 9) the string ran out for those two entitles (Illinois Act § 40(c)) without either having launched any such challenge, so that the permit then conferred a "complete and unconditional" right to act in accordance with the permit so long as Lavin complied with its terms.

It really requires no sophisticated analysis to see that Lavin's permit-conferred right was the conceptual equivalent of a party's rights under a binding contract whose continuation for its specified term depends on the party's ongoing performance of its own obligations under the contract. Binding contract rights provide a paradigmatic example of vested rights—of property rights—under state law, and it has never been thought that the possibility of future termination if the holder of those vested rights were to breach

some of its obligations can somehow operate to render the contract rights nonvested before any such hypothetical contingency actually arises.

Other far less conventional rights have been recognized as satisfying the concept of vested rights that cannot be impaired by the retroactive operation of later-enacted statutes (see, e.g., *Sepmeyer v. Holman*, 162 Ill.2d 249, 254–55, 205 Ill.Dec. 125, 642 N.E.2d 1242, 1244–45 (1994) (holding that a vested interest existed in a party's being free from a future suit once the relevant statute of limitations had expired) [9]; *Link v. Venture Stores, Inc.*, 286 Ill.App.3d 977, 979–80, 222 Ill.Dec. 283, 677 N.E.2d 486, 488–89 (5th Dist.1997) (holding that a vested property interest existed in a cause of action of negligence that accrued before a later statute invalidated it)). But it is really unnecessary to explore esoteric byways to see that here Lavin had acquired a vested right—a property interest—before Illinois Act § 40(a)(1) came into effect, thus foreclosing the ability of that new statute to divest Lavin of that right.

Navy presents several strands of argument in an effort to avoid that result. But each of those strands is gossamer, and they have no more tensile strength in combination.

First, Navy inexplicably asserts that Lavin had no vested rights in its permit when Illinois Act § 40(e)(1) became law because Navy filed a request for reconsideration within 35 days thereafter. In that respect Navy presumably relies upon the statement in 35 Ill.Adm .Code § 101.246(c) that "[a] timely-filed motion for reconsideration or modification stays the effect of the final order until final disposition of the motion." But Navy's request for reconsideration related to Board's July 10, 1997 order that had found Board had no jurisdiction over Navy's appeal, not to the propriety of Lavin's permit that had been issued on April 4, 1997 and that had become final—not open to attack by anyone with standing—well before both

---

**8.** It is irrelevant that on May 2 Navy had filed with Board a purported appeal of the issuance of the permit. That filing was simply a nullity, because under the law then in effect Navy lacked any legal standing to bring such an appeal.

**9.** While *Sepmeyer* was decided two years before *Armstead*, it followed the approach for determining retroactivity later adopted by *Armstead*.

Board's July 10, 1997 order and, of course, Navy's later-filed motion for reconsideration. Navy's bootstrapping effort at revisionist history fails.

Next Navy argues that Lavin could have no vested rights in its permit because even issued NPDES permits are subject to termination or modification by EPA or Illinois EPA. Navy suggests that Act § 1342(b)(1)(C)(iii), which provides that NPDES permits may be terminated or modified for cause due to "change of any condition that requires either a temporary or permanent reduction or elimination of the permitted discharge," leaves all of Lavin's rights in its permit at the mercy of future administrative changes. From that suggestion Navy leapfrogs to the conclusion that as Lavin had no unconditional rights in its permit, it had no vested rights in the permit before such termination or modification either.

Navy's position rests on the notion that Act § 1342(b)(1)(iii) allows free rein for the modification of any facet of a NPDES permit, but that is just not the case. Reg. § 122.62 authorizes EPA (and Reg. § 123.25 requires that the Illinois NPDES program give Illinois EPA the same power) to modify or revoke a permit only under specified circumstances, such as when a facility substantially changes its activity or (at the request of the permit holder) when EPA withdraws a regulation on which a permit condition was based. But Reg. § 122.62 does not allow modification or revocation of a permit by entities other than government actors. Even apart from the earlier-stated apt analogy to any contract right, where the possibility of future change under specific circumstances does not prevent the right from being vested before any such circumstance arises, Lavin's freedom from suit by third parties (such as Navy) when the permit was issued and became immune to challenge was *not* then subject to modification—so that Lavin had a clearly vested right before the statute was adopted.

Navy's final contention is that a judicial determination that Lavin had a vested right in its permit would frustrate a congressional policy goal expressed in the Act that third parties should have access to judicial review of NPDES permits. That argument relies on a February 7, 1996 EPA Rule Reg. Part 123, which required states to provide an opportunity for third party review within two years—by February 6, 1998—in order to maintain federal program authorization. Navy asserts that the EPA Rule, which was based on an interpretation of an Act provision, confirms Congress' intention that third party appeals be available.

But that EPA Rule did not require the states to make the right to third party appeals retroactive. Instead it required only that states comply by February 1998. Illinois did just that, but it did so (as it had a right to do without running afoul of the EPA Rule) *after* Lavin's rights were firmly vested. Even if the EPA Rule reflects a congressional preference that third parties have access to judicial review of NPDES permits, it does not express that preference in a way that impacts on this lawsuit by mandating that such a right be available retroactively. That congressional intent, implemented by allowing a two-year period within which to grant such a third-party right, is no obstacle to finding that Lavin had a vested right in its permit not later than May 10, 1997.

It must be concluded under controlling Illinois law that Illinois Act § 40(e)(1) does not apply retroactively, because before its enactment Lavin already had a vested right in the NPDES permit, free from the prospect of any challenge to that permit. This, then, requires the grant of defendants' Rule 56 motions as a matter of law and the concomitant denial of Navy's Rule 56 motion.

### Conclusion

Defendants' motions to dismiss must be denied because this Court has subject matter jurisdiction over Navy's claim under Section 1345, and defendants' appeal to *Burford* abstention fails as well. But there is no genuine issue of material fact on the merits of the case, and defendants are entitled to a judgment as a matter of law because Illinois Act § 40(e)(1) does not apply retroactively to give Board jurisdiction over Navy's claim. Navy's counter-motion for summary judg-

ment is of course denied. This action is dismissed with prejudice.