Dave WOODARD, Plaintiff,

v.

The BOARD OF COUNTY COMMIS-SIONERS OF JEFFERSON COUNTY, Defendant.

No. 96–4224–SAC.

United States District Court, D. Kansas.

July 11, 2000.

Dan E. Turner, Phillip L. Turner, Turner & Turner Law Firm, Topeka, KS, for Plaintiff.

James S. Pigg, Fisher, Patterson, Sayler & Smith, Topeka, KS, for Defendant.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

This is a diversity case in which the plaintiff, Dave Woodard, contends he was terminated from employment as an emergency medical technician ("EMT") in retaliation for whistle-blowing activities, in violation of the public policy of the State of Kansas. The court's jurisdiction is based solely upon diversity of citizenship, 28 U.S.C. § 1332, as the plaintiff is now a citizen of another state. No federal question claims are made. (Dk. 74, Final Pretrial Order.) The court has before it a Motion for Summary Judgment (Dk.49) filed by the defendant Board of County Commissioners of Jefferson County ("the Board").

The Board contends that summary judgment is proper for several reasons: 1) because its decision to terminate Woodard's employment is entitled to legislative, administrative, and/or quasi-judicial immunity; 2) because Woodard failed to appeal from the grievance committee's decision affirming his termination; and 3) because Woodard fails to raise a genuine issue of material fact that his termination was in retaliation for his whistle-blowing activities.

## I. Summary Judgment Standards

The standards and procedures for summary judgment are well established and will not be fully repeated here. See Celotex Corp. v. Catrett, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In essence, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Id.

## II. Undisputed Facts

The vast majority of the facts relevant to this motion are undisputed by Woodard. The following facts are either uncontroverted or, if controverted, construed in a light most favorable to plaintiff as the nonmoving party. Immaterial facts and factual averments not properly supported by the record are omitted.

1. Woodard was hired by Jefferson County in January 1990, into a full-time EMT position.

2. Although Woodard became an EMT-intermediate, he never completed the course of study to become a paramedic.

3. Dan Dailey was the director of the EMS for Jefferson County at the time Woodard was first hired as an EMT for the County.

4. When Woodard started working for the County, Kevin Klenken was attending paramedic school, and, in 1991, started the paramedic assist program, whereby Klenken would assist the EMTs when they requested such assistance or he thought the emergency call warranted his assistance.

5. By 1994 Klenken was the assistant director of the EMS and the director of the 911 department.

6. On April 7, 1995, Woodard and other EMS employees approached the Board, complaining about Klenken's conduct.

7. At the April 7, 1995 Board meeting, the EMS employees were asked to put their complaints in writing and to submit them to the commission.

8. The grievances were put into writing, and were presented to the Board on April 10, 1995. Among other matters, the grievance alleged that Klenken had used expired medications on critical patients on several occasions, and had adjusted the heart monitor on a patient with electrical activity to show a flat line. (Dk.51, Exh. 11, grievance).

9. On April 11, 1995, EMS discontinued its paramedic assist program when Klenken, the only paramedic employee, resigned, leaving only EMTs on the ambulance service.

10. On June 26, 1995, the Board met and decided to restructure the ambulance department so that one paramedic would be working at all times, 24 hours a day, with a minimum of three paramedics on staff, effective January 1, 1996. (Dk. 51, Exh. 11, Board minutes).

11. Dailey selected three EMTs to be replaced by paramedics. One of those three was Woodard. Woodard was notified by letter dated August 21, 1995, that he would be terminated from employment effective December 31, 1995.

12. The three EMTs selected for termination were the three least senior of the full-time EMTs working for the County at the time Dailey made his decision. Dailey based his decision not on seniority, but on his judgment of who he considered to be the best employees for Jefferson County Ambulance Service. (Dk. 51, Exh. 2, Dailey depo. p. 79–80.)

13. The two EMTs other than Woodard whom Dailey selected for termination had not attended the April 7, 1995 meeting at which Woodard and other EMS employees complained to the Board about Klenken's conduct, and had not been present when the grievances regarding Klenken were put into writing. One of those two had attended the April 10, 1995 Board meeting.

13. One of the EMTs Dailey chose to retain had been part of the group that appeared before the Board on both April 7 and 10, 1995. Another of the EMTs Dailey chose to retain had been part of the group that appeared before the Board on April 10, 1995.

14. In September or October, 1995, Woodard first contacted the Kansas Board of EMS regarding complaints about Klenken.

15. Before the effective date of his discharge, Woodard requested a formal hearing, alleging that his discharge was a violation of the employee handbook and a violation of Kansas law concerning the termination of individuals who are whistle-blowers. In that written request, (Dk. 51, Exh. 11, letter dated October 30, 1995), Woodard referenced the April 10, 1995 written grievances, and "the fact that Mr. Klenken attempted to have asbestos removed from a building owned and operated by the county without following State and Federal laws." *Id.*

16. On January 30, 1996, Woodard's complaint was heard by a grievance committee authorized to hear employee grievances, including those related to discharges. The Board's grievance policy

provided, in part, that no member of the grievance committee could be from the same department in which the grievance occurred and that at the grievance hearing "all concerned parties" were to be given opportunity to present their side, together with pertinent evidence or witnesses, and had the right to cross examine adverse witnesses and evidence.

17. During the January 30, 1996 grievance hearing, which lasted most of the day, Woodard was represented by counsel, who presented evidence and argument before a grievance committee comprised of three persons from other County departments.

18. The grievance committee issued its written ruling on February 7, 1996, denying Woodard's grievance based upon the evidence presented, finding that he was one of the three least senior employees and had not been terminated in retaliation for whistle-blowing.

19. Woodard neither sought any review by the Board from the grievance committee's decision nor filed any appeal with any court from that decision.

20. Although he has alleged failure to rehire, Woodard has never applied for any position with the Jefferson County Ambulance Service since his termination from the department.

21. On April 24, 1996, Woodard put the county on notice that he believed that his termination had been "in direct retaliation for his involvement in turning in Jefferson County to the State of Kansas in regard to the unlawful attempt to remove asbestos without using proper procedures and the other complaints that he and others brought to the attention of his supervisor and then the county commissioners on April 7 and April 10 respectively. The claimant was wrongfully terminated for this whistle-blowing activities(sic) involving Jefferson County." (Dk.51, Exh. 12). Neither that letter, nor any other notice to the Board mentions retaliatory failure to rehire.

These and other relevant material facts are set forth in more detail throughout the court's discussion.

### III. Analysis

#### A. Lack of Jurisdiction

The Board argues that this court has no jurisdiction to hear Woodard's claim of retaliatory termination because that same claim has already been determined by the grievance committee, and this court is not an appellate court for a state administrative body. Although the Board does not use the terminology, it essentially seeks application of the *Rooker–Feldman* doctrine. *See Mounkes v. Conklin*, 922 F.Supp. 1501 (D.Kan.1996).

It is an axiom that federal district courts exercise only original jurisdiction; they lack appellate jurisdiction to review state court decisions reached in judicial proceedings. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 103 S.Ct. 1303, 1311, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923). The *Rooker* and *Feldman* decisions have become known as the *Rooker–Feldman* doctrine. *Musslewhite v. State Bar of Texas*, 32 F.3d 942, 946 n. 11 (5th Cir.1994), *cert. denied*, 515 U.S. 1103, 115 S.Ct. 2248, 132 L.Ed.2d 256 (1995); *Fariello v. Campbell*, 860 F.Supp. 54, 65 (E.D.N.Y.1994). *Cf. Anderson v. State of Colorado*, 793 F.2d 262, 263 (10th Cir.1986) ("It is well settled that federal district courts are without authority to review state court judgments where the relief sought is in the nature of appellate review.").

The U.S. Supreme Court has stated that this doctrine applies only to judicial proceedings, not to legislative, ministerial, or administrative proceedings. *Feldman*, 460 U.S. at 476, 103 S.Ct. 1303. *Rooker–Feldman* simply is not implicated when no judgment of a state court is at issue. Although the Tenth Circuit has not yet addressed the issue, three federal circuits

have, all holding that the doctrine has no application to findings of administrative agencies. *See Van Harken v. City of Chicago,* 103 F.3d 1346, 1348–49 (7th Cir. 1997); *Narey v. Dean,* 32 F.3d 1521, 1525 (11th Cir.1994) (holding that the *Rooker–Feldman* doctrine did not apply to an unreviewed decision of the Georgia State Personnel Board); *Scott v. Flowers,* 910 F.2d 201, 206 (5th Cir.1990). *See also Birmingham v. Ogden,* 70 F.Supp.2d 353 (S.D.N.Y.1999); *United States v. Illinois Pollution Control Board,* 17 F.Supp.2d 800 (N.D.Ill.1998).

■ *Van Harken, id.* observes that "countless cases" allow parties who lose in state administrative proceedings to seek relief in federal court,[1] and that "[i]f the *Rooker–Feldman* doctrine is to be extended to administrative judgments, it will have to be done by the Court that created it." Despite the similarities between the grievance committee's proceedings in this case and adjudicatory procedures traditionally afforded by a state district court, the Board is plainly an administrative agency and not a Kansas court, and the finding of the grievance committee cannot be construed as a judgment in state court for purposes of the *Rooker–Feldman* doctrine. *See Birmingham v. Ogden,* 70 F.Supp.2d 353 (S.D.N.Y.1999); compare *Thomas v. Kadish,* 748 F.2d 276, 278–80 (5th Cir.1984) (holding that *Rooker–Feldman* does require a federal court to abstain from hearing claims inextricably intertwined with a judgment from a judicial type hearing if the administrative body was controlled by, or was an agent of, the state court system). *Rooker–Feldman* poses no bar to subject matter jurisdiction.

*B.  Failure to Exhaust Judicial Remedies*

The Board additionally alleges that Woodard failed to exhaust his judicial remedy of appealing the decision of the grievance committee to the state district court,

and is thus barred from pursuing his claims in federal court.

K.S.A. 19–223 provides:

Any person who shall be aggrieved by any decision of the board of commissioners may appeal from the decision of such board to the district court of the same county, by causing a written notice of such appeal to be served on the clerk of such board within thirty days after the making of such decision, and executing a bond to such county with sufficient security, to be approved by the clerk of said board, conditioned for the faithful prosecution of such appeal, and the payment of all costs that shall be adjudged against the appellant.

Similarly, K.S.A. 60–2101(d) states:

A judgment rendered or final order made by a political or taxing subdivision, or any agency thereof, exercising judicial or quasi-judicial functions may be reversed, vacated or modified by the district court on appeal.

This statute also gives the appellant 30 days to appeal.

The grievance committee made its findings, and recommended them to the Board (Dk.51, Exh. 11). Neither those written findings (Dk.51, Exh. 11) nor the grievance procedures published by the Board (Dk.51, Exh. 9) advise Woodard that he had any right to appeal that decision, or establish any period of time in which Woodard could seek reconsideration of those findings. The record fails to disclose whether Woodard received a copy of those findings, or whether they were merely sent to the Board. Although the Board apparently accepted the grievance committee's recommendation, the record fails to disclose any written finding doing so, any minutes reflecting such acceptance, any written communication to Woodard notifying him of such acceptance, or any communication from the Board to Woodard advising him that he had any right to appeal that decision or any period of time in which to seek reconsideration of the Board's findings.

---

**1.** This is particularly true in 42 U.S.C. § 1983 cases.

Under these circumstances, the court declines to bar Woodard's present suit on the basis of failure to exhaust his judicial remedies. This case is unlike those in which the doctrine has been applied to bar suits, *see e.g. Martinez v. Rowe*, 401 F.Supp. 1391 (D.Kan.1975) (finding exhaustion of judicial remedies necessary in military case); *Freeman v. Director of Kansas State Penitentiary*, 535 F.Supp. 325 (D.Kan.1982) (finding exhaustion of judicial remedies necessary in habeas corpus case), and the purposes behind the exhaustion requirement[2] would not be furthered by requiring Woodard to sue in state court instead of here. C. *Exclusive Remedy*

Woodard did not appeal the Board's decision to the state district court. The Board alleges that such an appeal is Woodard's exclusive remedy, and that summary judgment is warranted due to Woodard's failure to appeal that decision to the state district court.

It is well established under Kansas law that where an administrative agency or tribunal exercises quasi-judicial functions, the exclusive remedy for a party aggrieved by its order is to appeal to the state district court. *See e.g., Thompson v. Amis*, 208 Kan. 658, 493 P.2d 1259, *cert. denied*, 409 U.S. 847, 93 S.Ct. 53, 34 L.Ed.2d 88 (1972) (holding that in conducting review of a final administrative order, the Civil Service Board exercised quasijudicial functions, and that the exclusive remedy is by appeal pursuant to K.S.A. 60–2101(a) (Corrick) (now K.S.A.1981 Supp. 60–2101[d] )); *Gordon v. Harder*, 211 Kan. 611, 507 P.2d 341(1973) (The state appeals committee of the state department of social welfare exercises quasi-judicial functions in deciding questions of an applicant's eligibility for welfare payments and appeal may be taken from its decision to the district court pursuant to K.S.A. 60–2101(a) which appeal is the exclusive remedy for persons aggrieved by its orders); *Allen v. Board of Ed., U.S.D. No. 436*, 1994 WL 721504 (D.Kan.) (The exclusive remedy for a party aggrieved by the action of a school board exercising a quasi-judicial function is an appeal pursuant to K.S.A. 60–2101(d).) *Butler v. Unified Sch. Dist. No. 440*, 244 Kan. 458, 461, 769 P.2d 651 (1989) (same).

Failure to comply with the statute prohibits a collateral attack on the board's action by the filing of an independent action. Under those circumstances, a district court has no jurisdiction to consider a collateral attack on the school board's action. *See Dutoit v. Board of Johnson County Comm'rs*, 233 Kan. 995, 998–99, 667 P.2d 879 (1983) (holding that K.S.A. 19–223 provides the exclusive method by which a district court may review a judicial or quasi-judicial decision of a board of county commissioners but was inapplicable to appeals from a legislative-type decision by a board of county commissioners); *Concannon v. Board of Linn County Comm'rs*, 6 Kan.App.2d 20, 21, 626 P.2d 798 (1981) (K.S.A. 19–223 provides the exclusive method by which a district court may review a judicial or quasi-judicial decision of a board of county commissioners).

In alleging that this case should proceed, Woodard relies solely on *Larson v. Ruskowitz*, 252 Kan. 963, 965–966, 850 P.2d 253 (1993). There, the Kansas Supreme Court permitted a plaintiff who disagreed with the county commissioners' employment decision, to proceed straight to court without appealing pursuant to K.S.A. 19–223, in stating:

In *Dutoit v. Board of Johnson County Comm'rs*, 233 Kan. 995, 998–99, 667 P.2d 879 (1983), we discussed K.S.A. 19–223 and held that it provided the exclusive method

---

**2.** Exhaustion serves (1) to promote administrative efficiency by preventing premature interference with the agency processes, (2) to encourage respect for executive autonomy by allowing an agency opportunity to correct its own errors, (3) to facilitate judicial review by affording courts the benefits of an agency's experience and expertise, and (4) to serve judicial economy by having the agency compile the factual record. *Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).

by which a district court may review a judicial or quasi-judicial decision of a board of county commissioners but was inapplicable to appeals from a legislative-type decision by a board of county commissioners.

What type of decision is involved herein? In September 1990, the Board had approved a reorganization plan submitted to it by the Community Corrections Advisory Board which provided, inter alia, for the elimination of 15 positions including the two held by the plaintiffs. In the filing of the grievances, the plaintiffs were, in essence, asking the Board to reconsider that aspect of the reorganization plan which eliminated their positions. When their efforts at retention of their employment proved unsuccessful, they then brought this action in tort seeking damages for their termination after filing the necessary statutory notice.

We conclude this was an appropriate procedure. The action herein arises out of the employer-employee relationship of the parties. The Board was acting in an administrative capacity in approving the reorganization plan and in declining to modify the plan as requested by the plaintiffs. The tort action herein could have been brought without having sought reconsideration of the reorganization plan. The fact that such reconsideration or review was sought does not lock plaintiffs into a position of being required to exhaust that avenue through the court system in lieu of or as a condition to proceeding under the Tort Claims Act. We conclude the district court had jurisdiction herein.

In *Larson*, the plaintiffs took their grievance to the board, in essence requesting the board's reconsideration of its reorganization plan. That plan required the elimination of 15 positions including the two held by the plaintiffs. The case does not reflect that any evidentiary hearing was held, any witnesses were called, any counsel represented the plaintiffs, or that the grievance had any of the attributes of a quasi-judicial proceeding. The court's decision that it had jurisdiction to hear the

case was based upon its finding that the Board had acted in an administrative capacity, and not a quasi-judicial one in approving the reorganization plan and in declining to modify the plan as requested by the plaintiffs. *See id.*

The facts in the present case are quite different. Here, Woodard properly took his grievance to the grievance committee. His challenge was not to the policy decision made by the Board to restructure the ambulance department to have "one paramedic on board 24 hours a day effective January 1, 1996 with a minimum of three paramedics on staff," (Dk.51, Exh. 11), but to the specific decision, not made by the Board, that he should be one of those terminated as a result of that policy's implementation.

It is undisputed that the members of the grievance committee were not from the same department as Woodard and had the power to hear employee grievances, including those regarding terminations. At the grievance hearing, "all concerned parties" were given an opportunity to present their side, together with pertinent evidence or witnesses, and had the right to cross examine adverse witnesses and evidence. (*Id.*) During the January 30, 1996 hearing, which lasted most of the day, Woodard was represented by counsel, who presented evidence and argument before a grievance committee comprised of three persons from other County departments.

At that hearing, Woodard specifically alleged that he had been terminated in retaliation for whistle-blowing. (Dk. 51, Woodard depo. Exh. 25). On February 7, 1996, the grievance committee issued its written ruling, denying Woodard's grievance based upon the evidence presented, finding that he was one of the three least senior employees and had not been terminated in retaliation for whistle-blowing. Woodard neither sought review by the Board from the grievance committee's decision, nor filed any appeal from that decision with any court.

Under these facts, the grievance committee acted in a quasi-judicial capacity, and not an administrative one. K.S.A. 19–223 or 60–2101(d) thus provides the exclusive method by which a state district court may review a judicial or quasijudicial decision of a board of county commissioners. This court is not persuaded, however, that Woodard's failure to appeal to the state district court bars this court from examining his claims. The Board does not point the court to any federal cases in any jurisdiction which have so acted, and to do so would, in essence, be applying the *Rooker–Feldman* doctrine to an administrative decision, a result the court has rejected for reasons set forth above. Despite his failure to appeal to the state district court, Woodard was free to file an independent tort action in federal court, given the independent basis for federal jurisdiction.

### D.  Collateral Estoppel

The Board next alleges that Woodard's suit is barred by the doctrine of collateral estoppel. Although similar to the *Rooker–Feldman* doctrine, this court has held that two concepts are not identical. *Snodderly v. Kansas,* 79 F.Supp.2d 1241, 1245–1247 (D.Kan.1999).

Under 28 U.S.C. § 1738, federal courts must give the same preclusive effect to state court judgments that those judgments would be given in the courts of the state from which the judgment emerged. *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980); *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982). Pursuant to this statute, federal courts seeking to determine the preclusive effect of a judgment must look to the preclusion law of the state rendering the judgment. *Gates Learjet Corp. v. Duncan Aviation,* 851 F.2d 303, 305 (10th Cir.1988). However, even when

the requirements of res judicata and collateral estoppel are met, the court must still determine whether the plaintiff had a full and fair opportunity to litigate his claims before a court with the authority to adjudicate the merits of those claims. *Kremer,* 456 U.S. at 480–81, 102 S.Ct. 1883. A State may not grant preclusive effect in its own courts to a constitutionally infirm judgment, and other state and federal courts are not required to accord full faith and credit to such a judgment. *Id.* at 482, 102 S.Ct. 1883. Nevertheless, state court proceedings need only satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law. *Id.* at 481, 102 S.Ct. 1883. If the due process requirements are met, preclusion will operate and the claims will be barred. *Id.*

Federal courts must give a state agency's fact finding "the same preclusive effect that they would a decision of a state court, when the state agency is acting in a judicial capacity and gives the parties a fair opportunity to litigate." *University of Tennessee v. Elliott,* 478 U.S. 788, 799, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). As a matter of general policy, administrative estoppel is "favored." *Astoria Federal Sav. and Loan Ass'n v. Solimino,* 501 U.S. 104, 110, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991). Such preclusive effect is justified "on the sound and obvious principle of judicial policy that a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise." *Astoria,* 501 U.S. at 107, 111 S.Ct. 2166. As to the fact finding of state administrative tribunals, such preclusive effect also serves the value of federalism. *Elliott,* 478 U.S. at 798, 106 S.Ct. 3220.[3]

---

**3.** The court is aware that some courts have been reluctant to allow district courts to preclude a plaintiff from litigating constitutional issues, based on the unreviewed findings of a state administrative agency. *See Edmundson*

*v. Borough of Kennett Square,* 4 F.3d 186, 193 (3rd Cir.1993) ("[W]e do not think that an administrative agency consisting of lay persons has the expertise to issue binding pronouncements in the area of federal consti-

Issue preclusion, or collateral estoppel, prevents relitigation of issues conclusively determined in a prior action. *Jackson Trak Group v. Mid States Port Auth.*, 242 Kan. 683, 690–91, 751 P.2d 122 (1988). Collateral estoppel applies in Kansas when: "(1) [there was] a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment, (2) the parties [are] the same or in privity, and (3) the issue litigated [was] determined and necessary to support the judgment." *Id.*

Courts in this jurisdiction have had ample opportunity to apply the above rules, sometimes finding preclusive effect, and other times not, depending on whether the requirements noted above have been met. *See e.g., Scroggins v. State of Kan.*, 802 F.2d 1289, 1292 (10th Cir.1986) (finding no res judicata on issue of race discrimination where the hearing before the Kansas Civil Service Board focused on the reasonableness of the dismissal, not on the charges of discrimination); *Brin v. State of Kansas*, 101 F.Supp.2d 1343 (D.Kan. 2000) (declining to give preclusive effect to a finding of the Kansas Civil Service Board, where plaintiff's federal complaint included an issue of first amendment free speech not addressed by the KCSB); *Gutierrez v. Board of County Commissioners*, 791 F.Supp. 1529, 1533–34 (D.Kan.1992) (res judicata not applied to findings of Kansas unemployment compensation hearing in subsequent § 1981 and § 1983 suit); *Morales v. Kansas State University*, 727 F.Supp. 1389, 1392 (D.Kan.1989) (where issue of retaliation was fully litigated before the Kansas Civil Service Board and appealed to district court, such finding had collateral estoppel effect); *Hayes v. State of Kansas Dept. of Human Resources*, 1994 WL 608609, 66 FEP 656 (D.Kan. Oct 18, 1994), *aff'd*, 76 F.3d 392 (Table) (10th Cir. Feb. 02, 1996) (where issues of race discrimination and retaliation could have

tutional law.") Here, however, no constitu-

been litigated before the KCSB, Board's finding that plaintiff had been dismissed due to his sexual harassment of another employee, which finding was affirmed on appeal to district court, had res judicata effect.). *See also Parker v. K.N.I.*, 13 Kan.App.2d 685, 690, 778 P.2d 390 (1989) ("Until such time as the Kansas Legislature specifically states that an administrative action is the exclusive remedy for a discrimination claim, a negative finding by the Civil Service Board or a finding of no probable cause by the KCCR does not preclude a subsequent action in the district court for discriminatory discharge.")

Here, the parties to this case are the same as or in privity with those who were involved in the administrative hearing. (*See* Dk. 51, Exh. 11). The grievance committee had the responsibility of weighing controverted evidence and arriving at an independent judgment as to Woodard's termination. The committee heard evidence, reached a decision, made written findings, and forwarded its recommendation to the Board, who adopted it without revision. Woodard could have appealed that decision to the district court, but chose not to. The Board's decision, although unappealed, constitutes a judgment on the merits.

The grievance committee's decision determined the rights and liabilities of the parties on the very issue Woodard seeks to present to this court: whether his termination was in retaliation for his whistleblowing activities. The committee found that it was not. (Dk.51, Exh. 11). The committee found that the Board was aware of public concern about resignation of the paramedic, that the Board decided in July of 1995 to restructure and update the county's ambulance service, and instructed Dailey, the Director of such service, to replace any three members of the full-time staff with paramedics by January 1, 1996. *Id.* The Board further found that in August of 1995, Dailey notified Woodard that his employment would be terminated, at

tional issues have been raised.

which time Woodard was an employee-at-will, and was among the three least senior full-time ambulance personnel. *Id.* Based upon these factual findings, the committee concluded that Woodard was not wrongfully terminated, and that there was "no reason to believe that Mr. Woodard's termination from Jefferson County was based on a retaliatory act." *Id.*

██ Here, the issue facing the grievance committee was not merely the reasonableness of Woodard's termination, nor whether he had been terminated for a legitimate business reason, or for cause. Instead, the issue actually determined was identical to the sole issue before · this court.[4] Under these circumstances, Woodard's claim is subject to the "long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality." *See Astoria,* 501 U.S. at 107, 111 S.Ct. at 2169. Accordingly, this court will not address the host of other reasons propounded by the Board which may provide alternative grounds for granting its motion for summary judgment.

IT IS THEREFORE ORDERED that the defendant's motion for summary judgment (Dk.49) is granted.

---

**4.** Although Woodard additionally asserts a claim of failure to rehire, he has not given notice to the county of the specific facts upon which this claim is based (*see* Dk. 51, Exh. 12), and this claim is grounded upon tortious conduct separate and distinct from the retaliatory discharge claim. Woodard has thus failed to substantially comply with the notice requirements of K.S.A. 12–105b(d). *See John-son v. Board of Pratt County Comm'rs,* 259 Kan. 305, 325–26, 913 P.2d 119 (1996) (holding notice of damages from erosion cause by new bridge was not sufficient notice of claim arising out of remedial work done on bridge). Woodard's failure to give the municipality notice of his retaliatory failure to rehire claim bars him from pursuing this claim here. K.S.A. 12–105b(d) ("No person may initiate an action against a municipality unless the claim has been denied . . .").