Arlen J. BRIN, Plaintiff,

v.

State of KANSAS, Fort Hays State University, Johnny M. Williams, Francis Pechanec, Dr. Carl Parker, Terron Jones, and Larry Perkins, Defendants.

No. 97–4243–SAC.

United States District Court,
D. Kansas.

June 9, 2000.

William Scott Hesse, Office of Atty. General, Topeka, KS, for defendants.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

Arlen J. Brin ("Brin") is a former employee of Fort Hays State University ("FHSU"). After working for fifteen years as an FHSU employee, Brin was terminated against his will. Brin commenced this action *pro se,* ostensibly alleging violations of his constitutional right to freedom of speech and violations of certain civil rights. Brin seeks compensatory and punitive damages in excess of $200,000 and reinstatement into his former position.

This case comes before the court upon the defendants' "Motion to Dismiss" (Dk.11). The defendants seek dismissal of the plaintiff's claims on several grounds including Eleventh Amendment immunity, qualified immunity, failure to state a claim upon which relief can be granted, collateral estoppel and improper service on the State of Kansas and FHSU. The plaintiff initially filed a pro se response to the defendants' motion to dismiss, and subsequently retained the services of counsel, who filed a supplemental response to the defendants' motion to dismiss. The court has reviewed the pleadings and the arguments of counsel, and makes the following rulings.

### Pro Se Litigant

In analyzing the plaintiff's complaint, the court has taken into consideration the fact that he appears pro se. "A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991). "At the same time, we do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.* See *Drake v. City of Fort Collins,* 927 F.2d 1156, 1159 (10th Cir.1991) ("Despite liberal construction afforded pro se pleadings, the court will not construct arguments or theories for the plaintiff in the absence of any

Caleb Boone, Hays, KS, pro se.

Arlen J. Brin, Zurich, KS, pro se.

discussion of those issues."). Nor is the court to "supply additional factual allegations to round out a plaintiff's complaint." *Whitney v. State of New Mexico,* 113 F.3d 1170, 1173–74 (10th Cir.1997).

## Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction." *Henry v. Office of Thrift Supervision,* 43 F.3d 507, 511 (10th Cir. 1994). This court's jurisdiction is established by the Constitution and acts of Congress. *See United States v. Hardage,* 58 F.3d 569, 574 (10th Cir.1995) ("Federal courts have limited jurisdiction, *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 701, 102 S.Ct. 2099, 2103–04, 72 L.Ed.2d 492 (1982), and they are not omnipotent. They draw their jurisdiction from the powers specifically granted by Congress, *id.* at 701–02, 102 S.Ct. at 2103–04, and the Constitution, Article III, Section 2, Clause 1.").

The Tenth Circuit has commented on the limited jurisdiction of the federal courts and summarized the duties of the district court in considering whether it has jurisdiction to consider a case:

"The Federal Rules of Civil Procedures [sic] direct that 'whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.'" *[Tuck v. United Services Automobile Ass'n,]* 859 F.2d 842, 844 (10th Cir.1988) (quoting Fed.R.Civ.P. 12(h)(3)), *cert. denied,* 489 U.S. 1080, 109 S.Ct. 1534, 103 L.Ed.2d 839 (1989). Moreover, "[a] court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir.1974) (emphasis in original). Nor may lack of jurisdiction be waived or jurisdiction be conferred by "consent, inaction or stipulation." *Id.* Since federal courts are courts of limited jurisdiction, there is a presumption against our jurisdiction, and the party

invoking federal jurisdiction bears the burden of proof. *Id.*

*Penteco Corp. v. Union Gas System,* 929 F.2d 1519, 1521 (10th Cir.1991).

## Fed.R.Civ.P. 12(b)(6) Standards

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (*citing Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir.1993); *see Hospice of Metro Denver, Inc. v. Group Health Ins. of Oklahoma,* 944 F.2d 752, 753 (10th Cir.1991) ("Dismissal of a case pursuant to Fed.R.Civ.P. 12(b)(6) requires the legal determination that the plaintiff can prove no set of facts in support of his claim to entitle him to relief.") (citations omitted); *Thatcher Enterprises v. Cache County Corp.,* 902 F.2d 1472 (10th Cir.1990) ("Under Rule 12(b)(6), dismissal is inappropriate unless plaintiff can prove no set of facts in support of his claim to entitle him to relief."). The Tenth Circuit has observed that the federal rules " 'erect a powerful presumption against rejecting pleadings for failure to state a claim.'" *Maez v. Mountain States Tel. and Tel., Inc.,* 54 F.3d 1488, 1496 (10th Cir.1995) (*quoting Morgan v. City of Rawlins,* 792 F.2d 975, 978 (10th Cir.1986)).

A court judges the sufficiency of the complaint accepting as true the well-pleaded factual allegations and drawing all reasonable inferences in favor of the plaintiff. *Shaw v. Valdez,* 819 F.2d 965, 968 (10th Cir.1987). It is not the court's function "to weigh potential evidence that the parties might present at trial." *Miller v. Glanz,*

948 F.2d 1562, 1565 (10th Cir.1991). The court construes the allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). These deferential rules, however, do not allow the court to assume that a plaintiff "can prove facts that it has not alleged or that the defendants have violated the ... laws in ways that have not been alleged." *Associated General Contractors v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) (footnote omitted). Dismissal is a harsh remedy to be used cautiously so as to promote the liberal rules of pleading while protecting the interests of justice. *Cayman Exploration Corp. v. United Gas Pipe Line Co.,* 873 F.2d 1357, 1359 (10th Cir.1989).

## Analysis

### Improper Service

■ Defendants allege that the State of Kansas and FHSU were not properly served with process, although no challenge is made to service of process on the individual defendants. It is uncontested that the plaintiff, while acting pro se, mailed service of process to FHSU, instead of serving the governor or attorney general or her assistant, as required by law. See K.S.A. 60–304(d)(5). Defendants allege that the court therefore lacks personal jurisdiction over them, and that they should be dismissed from the case. The court disagrees.

Kansas law provides that substantial compliance with the service of process statute is sufficient. K.S.A. 60–204 provides in part:

> In any method of serving process, substantial compliance therewith shall effect valid service of process if the court finds that, notwithstanding some irregularity or omission, the party served was made aware that an action or proceeding was pending in a specified court in which his or her person, status or property were subject to being affected.

This statute has been applied to uphold service of process where the defendant was actually aware of the action against him, and was not prejudiced by the manner of service. See *e.g., Chee Craw Teachers Ass'n v. U.S.D. No. 247,* 225 Kan. 561, 563, 593 P.2d 406 (1979) (where party appears to have been clearly aware of the action and its consequences, and in the absence of a showing of prejudice by the particular means of service, the trial court's assumption of personal jurisdiction will be upheld.)

The Tenth Circuit has held that sufficiency of service under state law satisfies the federal rule regarding service of process. As the court stated in *Pedi Bares, Inc. v. P & C Food Markets, Inc.,* 567 F.2d 933, 936 (10th Cir.1977):

> Section 60–204 of the Kansas Rules of Civil Procedure says that substantial compliance with the provisions for process service suffices if a party is made aware of the action. Section 60–102 declares that the rules of civil procedure. shall be liberally construed. Under Kansas law, substantial compliance with the requirements for service and awareness of the action are all that is necessary. *Briscoe v. Getto,* 204 Kan. 254, 462 P.2d 127, 129. Here we have both. Sufficiency of service under state law satisfies the federal rule.

Here, defendants do not allege that they were not made fully aware of the commencement of this action when process was served. The record contains no allegation of prejudice to any defendant from the method of service of process. In light of the fact that the service was made by a *pro se* litigant, the court finds the mailing to constitute substantial compliance with the requirements for service, and therefore declines the State and FHSU's invitation to dismiss them for lack of personal jurisdiction based on improper service of process.

### Preclusive Effect of Prior Administrative Decisions

Defendants allege that all of plaintiff's claims are barred by the doctrines of law of the case, collateral estoppel, and/or res judicata, because the "issues raised by the

plaintiff in his complaint are the same issues that were litigated" in his Kansas Civil Service Board ("KCSB") hearing. (Dk.12, p. 11).

█ A review of the Final Order of the KCSB fails to support the defendants' assertions. Although that order addressed various facts giving rise to plaintiff's termination from employment, the sole issue before the board involved the reasonableness of his dismissal from employment, see K.S.A. 75–2949(f), and the sole finding made by the board was that such dismissal was reasonable. (KCSB Order, attached to Dk. 12).

Although plaintiff's *pro se* complaint is no model of clarity, it includes at least one allegation not addressed in the KCSB order, namely, retaliation for exercise of first amendment freedoms, (Dk.1, p. 3) and may be read to include others as well, such as disability discrimination or retaliation for filing a workers compensation claim. (Dk.1, ¶ II, 7.) Under these circumstances, no preclusive effect will be given, under any of the theories invoked by defendants, to the order of the KCSB. See *Scroggins v. State of Kan.,* 802 F.2d 1289, 1292 (10th Cir.1986) (finding no res judicata on issue of race discrimination where the hearing before the Kansas Civil Service Board focused on the reasonableness of the dismissal, not on the charges of discrimination.); *Parker v. Kansas Neurological Institute,* 13 Kan.App.2d 685, 690, 778 P.2d 390 (1989) ("Until such time as the Kansas Legislature specifically states that an administrative action is the exclusive remedy for a discrimination claim, a negative finding by the Civil Service Board or a finding of no probable cause by the KCCR does not preclude a subsequent action in the district court for discriminatory discharge."); *See also University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) (holding that findings of fact in unreviewed administrative proceedings do not have preclusive effect by collateral estoppel in Title VII cases, but that they do have preclusive effect in § 1983 and other proceedings.);

*Compare Morales v. Kansas State University,* 727 F.Supp. 1389, 1392 (D.Kan.1989) (where issue of retaliation was fully litigated before the Kansas Civil Service Board, such finding had collateral estoppel effect).

### Section 1983 Claims

#### Eleventh Amendment Immunity

█ The State of Kansas and FHSU correctly argue that they are entitled to Eleventh Amendment immunity on the plaintiff's claims, if any, pursuant to 42 U.S.C. § 1983. *See Ellis v. University of Kansas Medical Center,* 163 F.3d 1186, 1196 (10th Cir.1998) ("The Supreme Court has previously held that Congress did not abrogate the States' Eleventh Amendment immunity when it enacted 42 U.S.C. § 1983. *Quern v. Jordan,* 440 U.S. 332, 345, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979)"). "Thus, because Kansas has not unmistakably waived its Eleventh Amendment immunity, and Congress has not abrogated that immunity, the Eleventh Amendment bars the plaintiff's suit against Kansas and its state agencies in the federal courts." (footnote omitted); *Re v. New Vistas,* 173 F.3d 864, 1999 WL 178695 (10th Cir.1999) (Table) ("Congress did not abrogate Eleventh Amendment immunity when it enacted 42 U.S.C. §§ 1981 or 1983."), *petition for cert. filed* July 27, 1999. The plaintiff's § 1983 claims against the State of Kansas and FHSU are therefore dismissed for lack of jurisdiction.

█ This court also lacks jurisdiction over the plaintiff's § 1983 claims against the individual defendants in their official capacities. *See Elephant Butte Irrigation District of New Mexico v. Dept. of Interior,* 160 F.3d 602, 607 (10th Cir.) *cert. denied,* 526 U.S. 1019, 119 S.Ct. 1255, 143 L.Ed.2d 352 (1999) ("Generally, the law considers state officials acting in their official capacities to be acting on behalf of the state and immune from unconsented lawsuits under the Eleventh Amendment.") See *Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("An official-capacity suit is, in all

respects other than name, to be treated as a suit against the entity. . . . It is not a suit against the official personally, for the real party in interest is the entity.") Although exceptions to the general rule of immunity exist, none is applicable here.

■ Nor does this court have jurisdiction over the plaintiff's state law claims, if any there be, against the State of Kansas, FSHU and the individual defendants in their official capacity. *See Snodderly v. State of Kansas*, 79 F.Supp.2d 1241, 1243 (D.Kan.1999).

### *Qualified Immunity*

■ The individual defendants claim that they are entitled to qualified immunity on the plaintiff's § 1983 claims. "Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Tonkovich v. Kansas Board of Regents*, 159 F.3d 504, 515 (10th Cir.1998) (internal quotations and citations omitted). The key to this inquiry is the "objective reasonableness of the official's conduct in light of the legal rules that were clearly established at the time the action was taken." *Melton v. City of Oklahoma City*, 879 F.2d 706, 727 (10th Cir.1989) (quotations omitted), modified on other grounds, 928 F.2d 920 (10th Cir.1991).

Here, due to the vague and cursory nature of the *pro se* complaint, and both parties' failure to address the alleged conduct of the individual defendants, the court cannot determine which, if any, of the individual defendants undertook acts alleged to have violated the plaintiff's established rights. The court understands that no discovery has yet occurred in this case. However, the issue of qualified immunity is most often determined based on the face of the complaint. See, *e.g. Tonkovich*, 159 F.3d at 515.

■ The initial question in the qualified immunity inquiry should be whether the complaint sufficiently alleges the violation of a federal right. *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). The issue of "whether the plaintiff has asserted a violation of a constitutional right at all" is a "purely legal question." *Id.* If the complaint states a cognizable federal claim, the court should proceed to examine whether the right was clearly established at the time of the challenged conduct. That too is a question of law. *See, e.g., Harlow v. Fitzgerald*, 457 U.S. at 818, 102 S.Ct. 2727 (district court may appropriately determine on summary judgment "not only the currently applicable law, but whether that law was clearly established at the time an action occurred"). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).

■ Plaintiff rests his § 1983 claim on an alleged violation of his First Amendment right to free speech. It is well established a government employer, such as a University or its officials, "cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Lytle v. City of Haysville*, 138 F.3d 857, 863 (10th Cir.1998) (quotation marks and citation omitted). The Tenth Circuit has recently reviewed the framework for decisions of this nature, in stating:

> *Pickering v. Board of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), and its progeny set forth the applicable framework for determining the First Amendment rights of public employees. *See Moore v. City of Wynnewood*, 57 F.3d 924, 931 (10th Cir.1995). Under this framework, we must first decide whether the employee's speech may be "fairly characterized as constituting speech on a matter of public con-

cern." *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). We determine this "by the content, form, and context of a given statement, as revealed by the whole record." Id. at 147–48, 103 S.Ct. 1684. If the speech addressed a matter of public concern, we must next balance the employee's "interest in making [his] statement against 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through it employees.'" *Rankin v. McPherson*, 483 U.S. 378, 388, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987) (quoting *Pickering*, 391 U.S. at 568, 88 S.Ct. 1731, 20 L.Ed.2d 811). These two steps in the inquiry present legal issues to be resolved by the court. *See Gardetto v. Mason*, 100 F.3d 803, 811 (10th Cir. 1996).

*Prager v. LaFaver*, 180 F.3d 1185, 1190 (10th Cir.1999).

■ The court first addresses whether plaintiff's speech touches upon matters of public concern. "Speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of [public] officials, in terms of content, clearly concerns matter of public import." *Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir.1988); *see also Considine v. Board of County Comm'rs*, 910 F.2d 695, 700 (10th Cir.1990) (discussing Tenth Circuit cases in which whistle blowing activity was held to touch on matters of public concern). The Tenth Circuit has defined matters of public concern as "those of interest to the community, whether for social, political, or other reasons." *Lytle*, 138 F.3d at 863. The court is to discern "whether the speech was calculated to disclose misconduct or dealt with only personal disputes and grievances with no relevance to the public interests." *Conaway*, 853 F.2d at 796. Disclosure of governmental corruption relates to matters of "political, social or other concern to the community." *Connick*, 461 U.S. at 146, 103 S.Ct. 1684; *see also Conaway*, 853 F.2d at 796–97.

■ In deciding how to classify particular speech, courts focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose. *Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir.1988). This is admittedly often a difficult line to draw, and it requires a court to consider the "content, form and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48, 103 S.Ct. at 1690. *Woodward v. Worland*, 977 F.2d 1392, 1403 (10th Cir.1992).

Plaintiff's complaint alleges that "after asking not to be involved or to participate in illegal actions involving the sale of state salvage and collecting of checks with pay to the order left blank [he] was told by [his] supervisor, Larry Perkins, in July of 1995 that refusing an order or being uncooperative would be insubordination" ... and that a pattern of adverse action began thereafter. (Dk.1, p. 3, ¶ II.1.) No other allegations clarify to whom plaintiff made his request, exactly what plaintiff said, the manner in which such request was made, the motive for plaintiff's speech, or any other facts that would assist the court in determining whether plaintiff's speech touched on matters of public concern. If plaintiff's speech were merely a comment on his personal employee dispute, it would be unprotected by the First Amendment. *See Connick*, 461 U.S. at 148, 103 S.Ct. at 1690 (speech was merely extension of an internal employee dispute); *Hom v. Squire*, 81 F.3d 969 (10th Cir.1996) (Public employee's speech regarding his grievances which sought leave time and which challenged supervisor's letter of reprimand did not involve matter of public concern, but involved only matters of internal departmental affairs and personal interest, and therefore was not protected by First Amendment); *Gray v. Lacke*, 885 F.2d 399, 410–11 (7th Cir.), *cert. denied*, 494 U.S. 1029, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990) (an employee's complaint to her supervisors about sexual harassment against her was a matter of private concern and

did not state a cause of action under § 1983); *but see Starrett v. Wadley,* 876 F.2d 808 (10th Cir.1989) (female county employee's complaints about male supervisor's alcohol problems were matters of public concern where she testified that her motive in speaking out about supervisor's drinking problems was not purely personal but stemmed from her concerns as member of community).

■ Although it does not appear that plaintiff's speech was made in a public forum, the court does not find this fact fatal to plaintiff's claim. Plaintiff's choice to speak through a private forum, rather than a public one, does not remove the speech from First Amendment protection. *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 415–16, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979) (holding First Amendment protection applies when a public employee arranges to communicate privately with employer rather than express his view publicly); *Conaway,* 853 F.2d at 797 (employee's complaints made privately to City Administrator still held to be a matter of public concern).

■ However, "to be protected, speech must do more than just generally relate to a matter of public interest; it must also be sufficiently informative to be useful to the public in evaluating government conduct". *Moore v. City of Wynnewood,* 57 F.3d 924, 932 (10th Cir.1995); *Wilson v. City of Littleton,* 732 F.2d 765, 768 (10th Cir.1984). Thus, "[i]n order for a public employee's speech to be of public concern, . . . it is not always enough that its subject matter could in [certain] circumstances, [be] the topic of a communication to the public that might be of general interest. What is actually said on that topic must itself be of public concern." *Koch v. City of Hutchinson,* 847 F.2d 1436, 1445 (10th Cir.1988) (en banc) (quotation and citations omitted; emphasis in original).

■ Here, it does not appear from the scant complaint that plaintiff raised the issue in a public forum, nor did he challenge the propriety or legality of the alleged actions, except as they applied to him individually, as an employee. Although plaintiff may have complained of perceived illegality, the statement included in his complaint does not appear sufficiently informative to be useful to the public in evaluating government conduct. The circumstances in which the discussions here apparently occurred indicate that plaintiff's speech was a mere extension of his dispute with his supervisor over the nature of the assignments he had been given, and plaintiff's willingness to comply with directives from his employer. These factors indicate that plaintiff was speaking "not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest...." *See Connick,* 103 S.Ct. at 1690.

"When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employers' judgment is appropriate." *Connick,* 103 S.Ct. at 1692. In addition, "[w]hen employee speech concerning office policy arises from an employment dispute concerning the very application of that policy to the speaker, additional weight must be given to the supervisor's view that the employee has threatened the authority of the employer to run the office." *Id.* at 1693. Under these circumstances, the court finds that plaintiff's speech does not warrant protection under the First Amendment. Therefore, the complaint fails to state a cognizable federal claim of a First Amendment violation, to which qualified immunity might apply.[1] Because the plaintiff fails to state a valid First Amendment claim, the court does not reach the issue of the qualified immunity defense. *See Hill v. Department of Air Force,* 884 F.2d 1318, 1320 (10th Cir.1989) (per cu-

---

1. Because the complaint was drafted by a pro se plaintiff who is now represented by counsel, the court will permit the plaintiff 20 days in which to file a motion for reconsideration of the issue of qualified immunity, attaching affidavits, or other evidentiary matters for the court's consideration, and will permit the defendants twenty days in which to respond.

riam), *cert. denied,* 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990).

### Section 1985 Claim

Plaintiff suggests in his brief that a violation of 42 U.S.C. § 1985, may have occurred. (Dk.23, p. 9). The court disagrees, given the undisputed law summarized below.

■■■ Section 1985 prohibits persons from conspiring "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). A violation of section 1985 must include class-based or racially discriminatory animus. *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Atkins v. Lanning,* 556 F.2d 485, 489 (10th Cir.1977). "[I]n the absence of allegations of class based or racial discriminatory animus, the complaint fails to state a claim under § 1985." *Campbell v. Amax Coal Co.,* 610 F.2d 701, 702 (10th Cir.1979) (per curiam). Here, plaintiff has made no allegations of race or class-based animus. As such, he has not stated a claim under section 1985. *See Bisbee v. Bey,* 39 F.3d 1096, 1102 (10th Cir.1994).

### Americans With Disabilities Act (ADA) Claim

■■■ Although it is not a model of clarity, the plaintiff's complaint, read in the light most favorable to the plaintiff, may include a claim under the ADA. The Tenth Circuit has held "that Congress's statutory abrogation of Eleventh Amendment immunity in the ADA was a valid exercise of its Section 5 enforcement powers." *Martin v. State of Kansas,* 190 F.3d 1120 (10th Cir. 1999).[2] Consequently, this court has jurisdiction over the plaintiff's ADA claims against the State of Kansas and FHSU. The defendants' motion to dismiss the

plaintiff's ADA claims on Eleventh Amendment immunity grounds is therefore denied.

Although this court has jurisdiction to hear the plaintiff's ADA claims against the State of Kansas, that finding does not establish jurisdiction over any supplemental claims that may be stated in the complaint, including Kansas Act Against Discrimination claims. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 121, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (under the Eleventh Amendment, a federal court lacks jurisdiction to hear supplemental state law claims against a state although it has jurisdiction to hear federal claims against the state). Accordingly, to the extent that any supplemental claims against the State may be included in the complaint, they are dismissed for lack of jurisdiction.

The filing of a timely charge of discrimination with the EEOC is a jurisdictional prerequisite to institution of a lawsuit based on a claim of employment discrimination. Civil Rights Act of 1964, § 703(a)(1), (c), 704(a), 706(e) as amended 42 U.S.C.A. § 2000e–2(a)(1), (c), 2000e–3(a), 2000e–5(f)(1). The ADA expressly adopts the enforcement procedures governing Title VII actions, including administrative exhaustion requirements and filing procedures. See 42 U.S.C. § 12117(a). Plaintiff contends that he has properly stated a claim for disability discrimination under the ADA, and has properly exhausted his administrative remedies. Plaintiff concedes, however, that none of the individual defendants was specifically named in plaintiff's administrative charge. (See attachment to Dk. 24, plaintiff's KCCR charge of disability discrimination).

> Exhaustion of administrative remedies is a prerequisite to bringing suit under the ADA. To exhaust such remedies, a plain-

---

**2.** Because the issue was not briefed, the court expresses no opinion on the impact, if any, of the Supreme Court's recent decision in *Kimel v. Florida Board of Regents,* —— U.S. ——, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) (holding

that although the ADEA contains a clear statement of Congress' intent to abrogate states' Eleventh Amendment immunity, "the abrogation exceeded Congress' authority under § 5 of the Fourteenth Amendment.")

tiff must present his claims to the EEOC in a timely-filed written charge of discrimination. The charge must both "identify the parties," 29 C.F.R. § 1601.12(b), and "describe generally the action or practices complained of." Id. The charge "provide[s] notice of the alleged violation to the charged party, and ... provide[s] the ... [EEOC] with the opportunity to conciliate the claim." *Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 799 (10th Cir.1997) (citation omitted).

*EEOC v. Wal–Mart Stores, Inc.*, 202 F.3d 281 (Table) 1999 WL 1244485 (10th Cir.).

 In this circuit, the fact that the individual defendants were not specifically named in plaintiff's administrative charge does not necessarily preclude an action against them in federal court under Title VII or the ADA. *Romero v. Union Pacific Railroad*, 615 F.2d 1303 (10th Cir.1980) Instead, certain factors are to be evaluated in determining whether or not a party should be dismissed for failure to name him in the administrative charge. These factors are: (1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; (2) whether, under the circumstances, the interests of a named party are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party. *Id.* at 1311–12. The administrative charge "must be liberally construed in order to accomplish the purposes of the Act, since such complaints are written by laymen not versed either in the technicalities of pleading or the jurisdictional requirements of the Act." *Id.* at 1311.

 Plaintiff's administrative charge alleges that the "State of Kansas/Fort Hays State University and its representatives" engaged in discriminatory acts. (Dk. 23, KHRC charge, p. 2, ¶ II). The role played by the individual defendants is not specified either in that charge, or in the complaint in this case, or in the briefs filed by counsel. In fact, the court is at a loss as to even identify who the named defendants are in this case, but for the plaintiff's supervisor, whose name is revealed in the body of the complaint.

Here, plaintiff could have ascertained the roles of the unnamed parties at the time he filed his EEOC/KHRC complaint. Because the court cannot determine who the individual defendants are or what role they allegedly played in the alleged discrimination, the court cannot determine what their interests are, as is necessary to analyze the similarity of their interests to those of FHSU for the purpose of obtaining voluntary conciliation and compliance in the administrative proceedings. It does not appear, however, that absence from the EEOC proceedings would result in actual prejudice to the interests of the unnamed parties, as they have full opportunity to defend themselves in this proceeding. Nor is there any evidence that any unnamed party has represented to the complainant that its relationship with the complainant is to be through the named party.

Although the factors are not compelling, the court finds that on balance, they weigh in favor of dismissing the individual defendants from the discrimination charges for lack of jurisdiction. Plaintiff knew or could have reasonably ascertained at the time he filed the administrative charge of discrimination who the parties involved were, and what role they played. Plaintiff's administrative charge does not allege facts from which it can be inferred that any of the individual defendants have violated the ADA. *See Bratton v. Bethlehem Steel Corp.*, 649 F.2d 658, 666 (9th Cir. 1980) (failure to name defendant in EEOC

charge precluded subsequent Title VII action against that defendant where administrative charge did not allege facts from which it could be inferred that the defendant had violated Title VII). Instead, the charge (attached to Dk.23) is written in the passive voice, and fails to allege that anyone other than the "respondent" took any actions. This court cannot find either that the unnamed parties received notice of the administrative proceedings, or that there is a shared commonality of interest with the named party. *Compare Knowlton v. Teltrust Phones, Inc.,* 189 F.3d 1177 (10th Cir.1999) (finding sufficient commonality of interest where the named and unnamed parties constituted a single-employer.) Accordingly, the individual defendants are dismissed from plaintiff's disability discrimination claims.

### Punitive Damages

Defendants contend that plaintiff cannot receive punitive damages from the State of Kansas or FHSU. Defendants' sole support for this assertion is to quote a case holding that punitive damages may not be assessed against a municipality in a § 1983 case. (Dk.12, p. 7–8). *See Butcher v. McAlester,* 956 F.2d 973, 976 n. 1 (10th Cir.1992). This authority is obviously not persuasive here, where the defendants are the state, a state university, and state employees. The court will determine the availability of punitive damages at a later date when plaintiff's legal theories are clarified.

IT IS THEREFORE ORDERED that defendants' Motion to Dismiss (Dk.11) is granted in part, and denied in part, in accordance with the findings made herein.

IT IS FURTHER ORDERED that the stay is lifted, and that discovery shall progress on plaintiff's remaining claims, *i.e.,* the ADA claims against the State of Kansas and FHSU, according to the scheduling orders to be entered hereafter by the magistrate judge.