No. 58,804

Kurt W. Neunzig, and Kansas Commission on Civil Rights, *Appellants*, v. Seaman Unified School District No. 345, *Appellee*.

(722 P.2d 569)

Opinion filed July 18, 1986.

*Brandon L. Myers*, of Kansas Commission on Civil Rights, argued the cause and was on the briefs for the appellants.

*Robert D. Hecht*, of Scott, 'Quinlan & Hecht, of Topeka, argued the cause and was on the brief for the appellee.

*David M. Cooper*, of Kansas-National Education Association, of Topeka, was on the brief for the *amicus curiae*.

The opinion of the court was delivered by

SCHROEDER, C.J.: This case involves an appeal by the Kansas Commission on Civil Rights (KCCR) and Kurt W. Neunzig (a tenured teacher employed by Seaman U.S.D. No. 345) from an order of the Shawnee County District Court dismissing Neunzig's complaint before the KCCR of employment discrimination by U.S.D. No. 345. The district court determined the KCCR was without jurisdiction to hear Neunzig's complaint because Neunzig had already received a due process hearing on the matter pursuant to K.S.A. 72-5438.

The issues raised on appeal are jurisdictional and the merits of Neunzig's complaint of discrimination are not before this court. The issues are whether the district court erred by dismissing the case (1) based upon findings that the KCCR had no jurisdiction over Neunzig's complaint because of the operation of principles of election of remedies, collateral estoppel, and res judicata; and (2) based upon findings that the interests of "judicial economy" favored barring Neunzig's claim under the Kansas Act Against Discrimination (KAAD).

The issues involve the interplay of a teacher's rights under the Teacher Tenure Act, K.S.A. 72-5436 *et seq.*, and the KAAD, K.S.A. 44-1001 *et seq.*, and, therefore, the procedural background and facts giving rise to Neunzig's complaint are material to our decision.

On or about October 15, 1979, Neunzig was notified of the proposed termination of his contract as a teacher with Seaman U.S.D. No. 345. The proposed termination was premised upon his unexcused absence of four school days, which occurred while he attended a religious convocation of the World Wide Church of God, of which he was a member. Neunzig received a hearing before the Board of Education of U.S.D. No. 345 on October 22, 1979. On October 30, 1979, Neunzig was notified by the Board of his termination. Neunzig then requested a due process hearing before a hearing committee pursuant to K.S.A. 72-5438. At that hearing held February 7, 1980, Neunzig argued the termination

of his contract was based upon the exercise of his constitutional right of free exercise of religion. On March 14, 1980, the hearing committee rendered its recommendation to the Board that Neunzig's termination be made final, finding Neunzig had breached his employment contract. U.S.D. No. 345 approved the recommendation and terminated Neunzig's employment.

*Neunzig did not appeal that decision to the district court as provided by K.S.A. 72-5443.* Rather, on April 3, 1980, Neunzig filed a complaint with the KCCR under the KAAD claiming the termination of his contract was discriminatory and a violation of his constitutional right of free exercise of religion. A public hearing on Neunzig's complaint was held on November 16, 1983. The decision of the KCCR hearing examiner ordering Neunzig's reinstatement and compensation for loss of income was rendered March 7, 1984, and approved by the KCCR chairperson on May 3, 1984.

U.S.D. No. 345 appealed that decision to the district court pursuant to K.S.A. 44-1011, claiming the KCCR lacked jurisdiction to hear Neunzig's complaint. The district court agreed, ruling Neunzig could have initially filed his complaint with the KCCR rather than requesting a due process hearing. The district court ruled that after Neunzig had elected the due process hearing and raised all the relevant issues at that hearing, he could not abandon that procedure after a final order was issued and should have appealed to the district court pursuant to K.S.A. 72-5443.

Neunzig (complainant-appellant) and the KCCR (appellant) appeal from the district court's ruling dismissing the complaint filed under the KAAD against Seaman U.S.D. No. 345 (respondent-appellee). As previously stated, the issues are jurisdictional and do not involve the merits of Neunzig's complaint.

The due process procedure provided for terminating teacher contracts is found within the Teacher Tenure Act, K.S.A. 72-5436 *et seq.* K.S.A. 72-5438 provides that whenever a teacher is given written notice of the Board's intention not to renew the teacher's contract, or whenever a teacher is terminated before the end of his or her contract term, the teacher shall be provided a statement of reasons for the Board's actions and that the teacher may request a full due process hearing to be held before a three-member hearing committee. The purpose of the due process

hearing is to develop the grounds that have induced the Board to discontinue the teacher's services, and to determine whether the evidence presented establishes good cause within the spirit and purpose of the teacher tenure statutes. *Gillett v. U.S.D. No. 276,* 227 Kan. 71, 77-78, 605 P.2d 105 (1980).

At the due process hearing, the teacher and Board may be represented by counsel, may cross-examine each other, may present witnesses, and may testify on their own behalf. K.S.A. 72-5439. The hearing committee is empowered, when authorized by a majority of the committee, to administer oaths; issue subpoenas; authorize the taking of depositions; receive evidence; limit lines of questioning and testimony; call and examine witnesses; introduce documentary and other evidence into the record; regulate the course of the hearing; dispose of procedural requests, motions, and similar matters; and take any other action necessary to make the hearing accord with procedural due process. K.S.A. 72-5442. The hearing is not controlled by the rules of evidence. The burden of proof initially rests with the Board except when the allegation is that the teacher's contract was terminated or nonrenewed by reason of the teacher having exercised a constitutional right. K.S.A. 72-5446 sets forth the procedure when the abridgment of a constitutional right is alleged. The teacher comes forward with the evidence; if the hearing committee finds it is substantial the Board is required to submit its reasons, and those reasons must be supported by substantial evidence.

After the hearing the hearing committee makes a recommendation to the Board. If the hearing committee members are unanimous in their opinion, the Board shall adopt that opinion as its decision and such decision is final, subject to appeal to the district court as provided by K.S.A. 1985 Supp. 60-2101. K.S.A. 72-5443(b). If the hearing members are not unanimous in their opinion, the Board shall consider the opinion, hear oral arguments or receive written briefs from the parties, and decide whether the teacher's contract should be renewed or terminated. The Board's decision shall be final, subject to appeal to the district court as provided by K.S.A. 1985 Supp. 60-2101. K.S.A. 72-5443(c).

The scope of review applied by the district court on appeal is not de novo; the district court may not substitute its judgment for

that of the administrative agency or tribunal. It is restricted to deciding whether, as a matter of law, the agency or tribunal acted fraudulently, arbitrarily, or capriciously, whether the administrative order is substantially supported by evidence, and whether the tribunal's actions were within the scope of its authority. *Kelly v. Kansas City, Kansas Community College*, 231 Kan. 751, 754-55, 648 P.2d 225 (1982); *Brinson v. School District*, 223 Kan. 465, 469, 576 P.2d 602 (1978).

Turning to the provisions under the Kansas Act Against Discrimination, K.S.A. 44-1001 *et seq.*, we note that the Kansas Civil Rights Commission created therein is empowered to receive and investigate complaints alleging discrimination in employment because of religion, among other types of discrimination. K.S.A. 1985 Supp. 44-1005. If, after investigation, the KCCR determines no probable cause exists to support the complaint, the case is closed. If, however, the KCCR determines probable cause does exist, resolution of the matter is attempted through conference and conciliation. If those efforts fail, a public hearing may be held. K.S.A. 1985 Supp. 44-1005 and K.A.R. 21-45-1 through 25 provide for due process at the public hearing: notice, representation, introduction of evidence, cross-examination, argument, and briefs. Upon the service of the KCCR's orders, the dissatisfied party must file for a rehearing. If that rehearing application is denied, appeal may be taken to the district court as provided by K.S.A. 44-1011. The district court on appeal reviews the proceeding de novo to determine anew whether the respondent was guilty of discriminating against the complainant. K.S.A. 44-1011.

Is Neunzig precluded from filing a complaint with the KCCR alleging discrimination after he has already litigated the matter before a hearing committee under his protected rights as a tenured teacher?

The appellants refer this court to many cases involving the application of res judicata and similar principles when the procedural posture is between a state administrative agency and the courts, whether federal or state. But that is not the procedural posture of this case. Here, Neunzig first litigated his claim of religious discrimination before the hearing committee established by K.S.A. 72-5442. Unsatisfied with the results, Neunzig then filed a complaint with a second administrative body, the

KCCR, alleging the same matter previously heard by the hearing committee—that his termination of employment was based upon the exercise of his constitutional right to free exercise of religion. In essence, Neunzig has moved laterally—from one administrative body to another without exhausting his remedy under the Teacher Tenure Act in the first proceeding by appealing to the district court.

Does the doctrine of res judicata prevent such a lateral move? The appellants cite *Warburton v. Warkentin*, 185 Kan. 468, 345 P.2d 992 (1959), as supporting their contention that Kansas courts do not apply res judicata to administrative decisions. However, in *Warburton* res judicata is described as "intrinsically a judicial doctrine not to be applied unwittingly to legislative or executive activities which administrative bodies are sometimes empowered to exercise in addition to the judicial one." 185 Kan. at 476. Thus, the court did not preclude application of res judicata to administrative agency decisions when the agency is acting in a judicial capacity. Accord *United States v. Utah Constr. Co.*, 384 U.S. 394, 421-22, 16 L. Ed. 2d 642, 86 S. Ct. 1545 (1966). Furthermore, there is authority that the principles of res judicata should preclude the lateral move made by Neunzig:

> "When an agency conducts a trial-type hearing, makes findings, and applies the law, the reasons for treating its decision as res judicata are the same as the reasons for applying res judicata to a decision of a court that has used the same procedure. But the formality may be diminished in any degree, and when it is sufficiently diminished, the administrative decision may not be res judicata. The starting point in drawing the line is the observation that res judicata applies when what the agency does resembles what a trial court does. Such a resemblance or lack of it applies to determinations of law as well as to determinations of fact.
>
> . . . .
>
> "An especially good statement of the basic principle and of the reason for it was that of the original Restatement of Judgments, § 1 (1942): 'Where reasonable opportunity has been afforded to the parties to litigate a claim before a court which has jurisdiction over the parties and the cause of action, and the court has finally decided the controversy, the interests of the State and of the parties require that the validity of the claim and any issue actually litigated in the action shall not be litigated again by them.' The words 'court' and 'litigate' exclude administrative determinations; perhaps such limiting words should not have been used, because the purpose of common law res judicata applies equally to an administrative determination that resembles a judicial decision with respect to the procedure each party has opportunity to use. *Res judicata should cut off a second administrative proceeding when the first proceeding has provided opportunity for something like the procedural protection that a court provides*; but should res judicata apply only then?

"The second Restatement of Judgments (1982), unlike the first, deals with 'Adjudicative Determination by Administrative Tribunal.' Section 83 provides in part:

> 'An adjudicative determination by an administrative tribunal is conclusive under the rules of res judicata only insofar as the proceeding resulting in the determination entailed the essential elements of adjudication, including: . . . (b) The right on behalf of a party to present evidence and legal argument in support of the party's contentions and fair opportunity to rebut evidence and argument by opposing parties. . . .'

"The main idea of the quoted portion of § 83—that res judicata should apply to an adjudicative determination by an administrative tribunal when parties have opportunity to use procedure having some resemblance to court procedure—is surely sound. But in two important respects, § 83 and Comment *b* on § 83 may be of questionable soundness: (1) The provision that res judicata applies 'only' when 'fair opportunity to rebut evidence and argument by opposing parties' may wrongly assume that 'opposing parties' are necessary for adjudication. (2) The Restatement in Comment *b* may be mistaken in asserting: 'According finality to administrative adjudication recognizes the similarity between the adjudicative procedure of modern administrative agencies and modern judicial procedure. That similarity did not always exist. . . . In the performance of adjudicative functions, however, administrative agencies are generally required by law to employ procedures substantially similar to those used in courts.'" 4 Davis, Administrative Law Treatise § 21:3 (2d ed. 1983).

Here, in the proceedings before the hearing committee pursuant to K.S.A. 75-5442, Neunzig asserted he had the right to be absent during October 1979 as a constitutionally protected civil right; he argued that to deny him that right and to terminate his contract was to deny him the constitutional right of freedom of religion. As previously set forth, the hearing committee possesses many of the functions associated with court proceedings. K.S.A. 72-5439, 72-5442. The fact the rules of evidence do not apply at the due process hearing does not lessen the quasi-judicial character of the hearing committee. By requesting the due process hearing, Neunzig was afforded the type of procedural protection a court provides. The hearing committee's recommendation to the Board to terminate Neunzig was final and was adopted by the Board.

Having determined that res judicata precludes a second administrative proceeding when the first proceeding provided the procedural protections similar to court proceedings, we must determine whether the requirements of res judicata or collateral estoppel are satisfied. Res judicata (claim preclusion) prevents the relitigation of claims previously litigated and contains four elements: (1) same claim; (2) same parties; (3) claims were or

could have been raised; and (4) a final judgment on the merits. Collateral estoppel (issue preclusion) prevents the relitigation of issues previously litigated and, if res judicata is found to apply, there is no need to consider the application of collateral estoppel. See generally 46 Am. Jur. 2d, Judgments §§ 394-620. See also *In re Estate of Reed*, 236 Kan. 514, 519-21, 693 P.2d 1156 (1985); *Wirt v. Esrey*, 233 Kan. 300, 308, 662 P.2d 1238 (1983).

Here, all the elements of res judicata are satisfied. First, Neunzig raised the same claim before the due process hearing committee that he raised before the KCCR public hearing examiner—that the right to be absent from school to attend a religious convocation was a constitutionally protected right and that to deny him that right and to terminate him was to deny him the constitutional right of freedom of religion. Second, the parties before each administrative hearing were the same—teacher v. Board. Third, had Neunzig not raised the claim of an abridgment of his constitutional rights at the due process hearing, he could have because K.S.A. 72-5446 specifically so provides. Fourth, the hearing committee's recommendation to the Board to terminate Neunzig was a complete determination on the merits and, when the Board made the decision to terminate, that decision was final pursuant to K.S.A. 72-5443.

The Colorado court was faced with a similar situation in *Umberfield v. Sch. Dist. No. 11*, 185 Colo. 165, 522 P.2d 730 (1974). There, after a teacher, a member of World Wide Church of God, attended a religious convocation without permission of the school board, he received written notice of the Board's intention to dismiss him. Umberfield, the teacher, received a full adversary hearing under the Colorado Teacher Tenure Act. The panel's recommendation to dismiss Umberfield was not appealed to the district court as provided by Colorado law. Rather, Umberfield filed a complaint with the Colorado Civil Rights Commission. The hearing examiner ruled Umberfield had not been dismissed because of his religious beliefs. That ruling was reversed by the Commission. The school district sought judicial review and the district court found that because Umberfield failed to seek judicial review of the Teacher Tenure Panel's decision, he could not attack his dismissal in another forum. The Colorado Court of Appeals disagreed on that point. The Colorado Supreme Court, however, agreed with the district court's dispo-

sition of the case. The court found Umberfield was able to present all evidence before the Teacher Tenure Panel while the sole function of the Civil Rights Commission was to make a finding of fact regarding discriminatory practices in employment. The court stated:

"Because Umberfield had a full adversary hearing before the Teacher Tenure Panel which had the power to determine all his claims of religious discrimination, we hold that the doctrine of *res judicata* operates as a bar to the relitigation of issues which Umberfield raised or could have raised in the hearing before that panel and on judicial review. [Citations omitted.] To hold otherwise could result in an anomalous situation where the same reviewing court would be compelled to affirm opposite results of the two administrative bodies. Assuming credible and conflicting evidence, a school board might dismiss a tenured teacher and a reviewing district court could uphold the dismissal under C.R.S. 1963, 3-16-5. The same district court, in reviewing a subsequently filed proceeding before the Civil Rights Commission, would be bound to uphold a contrary result if supported by substantial evidence. C.R.S. 1963, 80-21-8(6). To avoid this judicial inconsistency, the doctrine of *res judicata* must be applied to the subsequently filed proceeding before the Civil Rights Commission." 185 Colo. at 173-74.

There are statutory and other distinctions between Kansas and Colorado law, but we think these differences are immaterial to the basic issue presented.

We hold Neunzig's failure to seek judicial review of the school board's decision to terminate his employment, after it approved the recommendation of the hearing committee following the due process hearing under the Teacher Tenure Act, precludes his attack upon the dismissal of his discrimination complaint under the Kansas Act Against Discrimination. K.S.A. 72-5443 provides that the Board's decision to terminate a teacher is final, subject to appeal to the district court. The doctrine of res judicata precludes the teacher from instituting a second administrative proceeding before the KCCR on issues which the teacher raised or could have raised before the hearing committee.

Having determined res judicata is applicable to the instant case, this court finds appellant's second issue based on judicial economy is without merit. The doctrine of res judicata rests upon considerations of economy of judicial time and public policy which favors establishing certainty in judgments. *Roach v. Teamsters Local Union No. 688*, 595 F.2d 446 (8th Cir. 1979).

The judgment of the lower court is affirmed.