**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 31 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DAVE WOODARD,

    Plaintiff-Appellant,

v.

JEFFERSON COUNTY, County Clerk,
County Treasurer or any one of the
County Commissioners of Jefferson
County, Oskaloosa, KS,

    Defendants-Appellees.

No. 00-3254
(D.C. No. 96-CV-4224-SAC)
(D. Kan.)

---

**ORDER AND JUDGMENT** *

---

Before **EBEL** , **ANDERSON** , and **KELLY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Dave Woodard, a Florida citizen, appeals from summary judgment granted in favor of the Jefferson County Board of County Commissioners (Board) on his Kansas state-law tort claim of retaliatory discharge. Jurisdiction in federal court is based on diversity of the parties. *See* 28 U.S.C. § 1332. The district court concluded that an internal grievance committee's "finding" that Mr. Woodard had not been wrongfully terminated by the county Emergency Medical Services Department (EMS) in retaliation for whistle-blowing should be given collateral estoppel effect in his civil action. The court also held that the Board's decision to uphold Mr. Woodard's termination "constitutes a judgment on the merits" entitled to application of the doctrine of res judicata. *Woodard v. Bd. of County Comm'rs*, 108 F. Supp. 2d 1184, 1192 (D. Kan. 2000). Our jurisdiction arises under 28 U.S.C. § 1291, and we reverse and remand.

## I. Relevant facts and proceedings

The following facts are undisputed or viewed in a light most favorable to Mr. Woodard as the party opposing summary judgment. *See Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 977 (10th Cir. 1995). Mr. Woodard worked full-time as an emergency medical technician-intermediate (EMTI) for the Jefferson County EMS from 1990 until 1995, when he was terminated. Dan Dailey was the director of the EMS, and Kevin Klenklen was the assistant director and the EMS's only paramedic on staff. In 1995, Mr. Woodard

became concerned that asbestos in the building used for 911 services was being improperly removed and disposed of under Mr. Klenklen's direction. Mr. Woodard and two other EMS employees, including Mike Tyler, took samples of the material and delivered them to the Kansas Department of Health and Environment on April 6, 1995. The next day, Mr. Woodard and other EMS employees attended a Board meeting to complain both about the asbestos and about the conduct of Mr. Klenklen. Mr. Dailey also attended the Board meeting.

Mr. Woodard did most of the talking at the Board meeting. Besides discussing the asbestos problem, he alleged, *inter alia,* that Mr. Klenklen endangered the lives of patients he treated as a paramedic, falsified recertification records and state reports, and did private work on county time. *See* Appellee's App. at 81, 85-89, 122. On April 10 the Board met again with the group, with Mr. Woodard and Mr. Tyler speaking on behalf of the group. Mr. Woodard gave the Board a written grievance. The Board "scolded" the employees for going over Mr. Dailey's head and went into executive session, instructing the employees to talk with the county attorney. *Id.* at 124. The attorney told the employees that the county would face liability issues if the grievance was made public. *Id.* Later that day, Mr. Rhodes, one of the Board members, attended an EMS training meeting and told the employees that anonymous faxes regarding the grievance had been sent to the local press. He admitted that he was upset about the faxes.

-3-

*Id.* at 103. Mr. Rhodes was quoted in the local newspaper as calling the written grievance "malarkey." *Id.* at 109-110. On April 11, Mr. Klenklen resigned as the assistant director and paramedic on call, saying that he did not "want to work with those guys anymore," but he maintained part-time employment with the EMS in "technical assistance," reporting directly to the Board. *Id.* at 103, 83. He later recommended hiring full-time paramedics instead of EMTs. *Id.* at 107.

On June 26, the Board voted to restructure the EMS so that paramedics would replace several EMT/EMTI positions. Mr. Tyler testified that, because Mr. Dailey said he was going to fire three or four EMTs and keep those who had not caused trouble, he requested and received a transfer to the sheriff's department. Mr. Dailey selected two EMTs/EMTIs for termination effective December 31, 1995, one of whom was Mr. Woodard. [1] Russell Dunn, a retained EMTI, testified that Mr. Dailey said, "now that the troublemakers [are] gone, maybe we [can] get something accomplished." *Id.* at 174.

Mr. Woodard challenged his termination, requesting review by the county grievance committee as provided in the county personnel manual. He asked the grievance committee to recommend his reinstatement and "payment of damages." *Id.* at 139. The grievance committee was created by the Board as part of an

---

[1] Although Mr. Dailey also terminated Loren Hubbard as a full-time EMT, he retained him as a part-time EMT, rehiring him in a full-time capacity in 1996. Appellee's App. at 79.

-4-

"internal grievance procedure," and is made up of other county employees appointed by the Board. *Id.* at 115, 116, 139. The county clerk, who acts as the secretary for Board meetings and who had attended the meetings during which Mr. Woodard presented his complaints about asbestos and Mr. Klenklen, was one of the three county employees serving on Mr. Woodard's grievance committee. *Id.* at 127-28, 139.

At the hearing Mr. Woodard was represented by counsel and had an opportunity to present evidence and cross-examine the county's witnesses. The grievance committee sent a letter to the Board on February 2, 1996, stating its "belief that Mr. Woodard was not wrongfully terminated and should not be reinstated or paid damages." *Id.* at 140. The Board upheld Mr. Woodard's termination.

Mr. Woodard then filed suit for wrongful termination in federal district court based on diversity jurisdiction. The district court granted summary judgment in favor of the Board. The court found that the grievance committee had "actually determined" the issue of whether Mr. Woodard had been terminated in retaliation for whistle-blowing and concluded that "the Board's decision, although unappealed, constitutes a judgment on the merits." *Woodard*, 108 F. Supp. 2d at 1192-93. The court held that the county was entitled to summary judgment because Mr. Woodard's claim was "subject to the 'long

favored application of the common-law doctrines of collateral estoppel (as to

issues) and res judicata (as to claims) to those determinations of administrative

bodies that have attained finality.'"  *Id.* at 1193 (quoting  *Astoria Fed. Sav. &*

*Loan Ass'n v. Solimino* , 501 U.S. 104, 107 (1991)).


## II.  Standard of review

> We review the district court's grant of summary judgment de novo,
> applying the same legal standard used by the district court.  Under
> Fed. R. Civ. P. 56(c), summary judgment is proper only if the
> evidence, reviewed in the light most favorable to the . . . party
> opposing the motion, demonstrates that there is no genuine issue as
> to any material fact, and that the moving party is entitled to judgment
> as a matter of law.

*Frandsen* , 46 F.3d at 977.  Because we sit in diversity, we apply Kansas

substantive law, reviewing de novo the district court's conclusions of law that

collateral estoppel and res judicata bar Mr. Woodard's claim as well as the

threshold issue of jurisdiction.  *See Barrett v. Tallon* , 30 F.3d 1296, 1300

(10th Cir. 1994) .


## III.  Jurisdiction

We must preliminarily address an argument the Board raised as an

alternative basis for disposition, as it relates to the subject-matter jurisdiction of

the federal courts to review this case.  *See Ruhrgas AG v. Marathon Oil Co.* ,

526 U.S. 574, 577 (1999) (stating that "jurisdiction generally must precede merits

-6-

in dispositional order"). The Board argues that Mr. Woodard's suit should be dismissed because his exclusive remedy was to appeal the Board's decision to uphold his termination to the state district court under Kan. Stat. Ann. § 19-223 (providing for appeal to the state district court of "any decision" of a county board). If Mr. Woodard's exclusive remedy was in fact to appeal the decision to state court under section 19-223, the federal district court should have dismissed the suit for retaliatory discharge for lack of subject matter jurisdiction. *See Larson v. Ruskowitz*, 850 P.2d 253, 255 (Kan. 1993).[2]

Before the turn of the last century, the Kansas Supreme Court reviewed the predecessor to section 19-223 and noted that county boards made legislative, political, administrative, ministerial, and quasi-judicial decisions. *Fulkerson v. Stevens*, 1 P. 261, 262 (Kan. 1883). The court determined that "the legislature never intended that an appeal should lie from every decision made by the board of county commissioners." *Id.* The court held that appeals to a district court under the predecessor to section 19-223 "must be limited to such cases as require the exercise of purely judicial power." *Id.* In order to determine whether a particular

---

[2]      Although acknowledging that, under Kansas law, failure to comply with an exclusive remedy jurisdictionally bars collateral attack of a board's decision by the filing of an independent action, the district court concluded that to do so "would, in essence, be applying the *Rooker-Feldman* doctrine to an administrative decision," which the court rejected as inappropriate. *Woodard*, 108 F. Supp. 2d at 1189-91. We believe the court confused the two legal concepts and we do not rely on its analysis in arriving at the same result.

board's specific decision was an exercise of judicial power and therefore appealable under the statute, the court in *Fulkerson* examined the enabling act to determine whether that board had specifically been given judicial powers in regard to its authority to grant petitions to organize new townships. Finding none, it held that the board's decision to grant or deny a petition to organize was not quasi-judicial and therefore not appealable. *See id.* at 262-63.

Since *Fulkerson* was decided, Kansas courts have consistently held that the phrase "any decision" in section 19-223 means only "a judicial or quasi-judicial decision" (unless appeal is expressly provided for under this section by statute), and that section 19-223 provides the exclusive method to appeal from a judicial or quasi-judicial decision of a county board. *See Dutoit v. Bd. of County Comm'rs*, 667 P.2d 879, 884 (Kan. 1983).

Thus, under *Fulkerson* and its progeny, "quasi-judicial" presupposes the power to adjudicate. *See also Thompson v. Amis,* 493 P.2d 1259, 1263 (Kan. 1972) ("quasi-judicial is a term applied to administrative boards or officers empowered to investigate facts, weigh evidence, draw conclusions as a basis for official actions, and exercise discretion of a judicial nature").

We find the jurisdictional issue in this case to be controlled by *Fulkerson* and *Larson, supra.* In *Larson*, the Wyandotte Board of County Commissioners upheld the terminations of two county employees after the employees filed

grievances protesting their layoffs. *Larson*, 850 P.2d at 255. The former employees then filed suit in state court for wrongful termination, alleging that they had been laid off in retaliation for exercising their First Amendment rights. They were awarded damages, and on appeal the Board contended for the first time that the state court had no jurisdiction over the suit because "the proper procedure was for the plaintiffs to have appealed the decision of the Board affirming the layoffs to the district court under K.S.A. 19-223." *Id.*

Noting that, under *Fulkerson*, section 19-223 is applicable only to a board's quasi-judicial decisions, the Kansas Supreme Court held that the board's decision to approve a reorganization plan eliminating the plaintiffs' jobs, thereby upholding the employees' terminations, was made while the board was acting in an administrative capacity and was therefore not subject to section 19-223 review. *Id.* at 256. The *Larson* court concluded that it was "an appropriate procedure" for a terminated county employee who had filed a grievance and whose termination had been upheld by the county board to subsequently file a tort suit for retaliatory discharge in state court. *Id.*

The district court distinguished *Larson* because the case did "not reflect that any evidentiary hearing was held, any witnesses were called, any counsel represented the plaintiffs, or that the grievance had any of the attributes of a quasi-judicial proceeding." *Woodard*, 108 F. Supp. 2d at 1190. Insofar as

*Larson* demonstrates that a board's decision to uphold county employee terminations is not a quasi-judicial decision but rather an administrative one, however, this distinction is not relevant. "[N]ot all proceedings involving elements of [adjudicatory] procedure constitute adjudication." RESTATEMENT (SECOND) JUDGMENTS § 83 cmt. b.

In further attempting to distinguish *Larson*, the district court also stated that Mr. Woodard's challenge to the specific decision to terminate him was to one "not made by the Board" and thus *Larson's* holding did not apply. *See Woodard*, 108 F. Supp. 2d at 1190. This statement is erroneous not only because the Board in fact terminated Woodard through Mr. Dailey, its agent and head of the county EMS department, but also because the Board had the exclusive authority to uphold that termination. It is also internally inconsistent with the district court's later statement that the Board's unappealed-from decision to uphold the termination decision "constitutes a judgment on the merits." *Id.* at 1192.

The Board argues that *Larson* is distinguishable because the board in that case "was being asked to make, alter, or repeal a law or rule for the future." Appellees' Br. at 14. We disagree. The board in *Larson* ultimately was asked to do exactly what the Board in this case was asked to do: reinstate the employment of the terminated employees. The fact that the board in *Larson* also declined to modify an aspect of its legislative decision did not make its administrative

decision to uphold the terminations a quasi-judicial one. *See Ditch v. Bd. of County Comm'rs*, 650 F. Supp. 1245, 1250 (D. Kan. 1986) (stating that "most courts hold that a decision to hire or fire a specific individual for a specific position is administrative or managerial" and collecting cases), *order amended on other grounds by* 669 F. Supp. 1553 (D. Kan. 1987).

Although the rationale upon which the *Larson* court rejected the argument that section 19-223 provides the exclusive judicial procedure in which a terminated county employee may challenge his termination is not crystal clear, it relied upon the requirement of a quasi-judicial decision and cited *Fulkerson*, which predicates a quasi-judicial decision on statutory authority to adjudicate. In our discussion in part IV.B. below, we address in more detail why neither the Board nor its grievance committee have power to adjudicate termination disputes between the county and Mr. Woodard. We need not further discuss this principle here, however, because *Larson*, which factually is on all fours with the case before us, at the very least holds that terminated county employees who have challenged their terminations through a grievance procedure to a county board may bring independent tort actions for retaliatory termination. Thus, under *Larson*, the federal district court had jurisdiction to hear and decide Mr. Woodard's retaliatory discharge claim.

## IV. Discussion

-11-

On the merits, we must determine whether, in a state-law tort action for retaliatory discharge, Kansas courts (1) would give collateral estoppel effect to "findings" of a county board's internal grievance committee regarding the employee's request for reinstatement and (2) would apply res judicata to a county board's final determination to uphold its employee's termination. *See Amoco Prod. Co. v. Heimann*, 904 F.2d 1405, 1415 n.10 (10th Cir. 1990). There appear to be no Kansas cases directly on point, thus we attempt to predict how Kansas's highest court would rule, considering relevant decisions of Kansas courts, other state and federal courts, and the general weight and trend of authority. *See FDIC v. Schuchmann*, 235 F.3d 1217, 1225 (10th Cir. 2000). We particularly note that, in deciding preclusion issues of first impression, because "Kansas law does not appear to differ significantly from the federal law regarding preclusion doctrines," Kansas courts specifically look to Supreme Court and circuit law to decide application of the doctrines. *Grimmett v. S&W Auto Sales Co.*, 988 P.2d 755, 759-60 (Kan. Ct. App. 1999). We also note that, in determining whether res judicata should apply to administrative proceedings, Kansas follows the principles expressed in the RESTATEMENT (SECOND) OF JUDGMENTS § 83 (1980). *See Neunzig v. Seaman Unified Sch. Dist. No. 345*, 722 P.2d 569, 574 (Kan. 1986); *Parker v. Kan. Neurological Inst.*, 778 P.2d 390, 392 (Kan. Ct. App. 1989).

A review of case law indicates that Kansas courts generally apply preclusion principles only to findings and final decisions of (1) administrative agencies with adjudicative powers (2) to decide the particular issue (3) when the decision is actually a judicial, and not an administrative or managerial, decision; (4) in a proceeding providing due process protections; if (5) the issue has been fully litigated. *See Murphy v. Silver Creek Oil & Gas, Inc.*, 837 P.2d 1319, 1321 (Kan. Ct. App. 1992). In determining these matters, Kansas courts look to the state statutes creating the agency--the enabling act--and the specific administrative procedures the agency follows. *See Neunzig*, 722 P.2d at 572. This is because "[a]dministrative agencies are creatures of statute and their power is dependent upon authorizing statutes, therefore any exercise of authority claimed by the agency must come from within the statutes. There is no general or common law power that can be exercised by an administrative agency." *Legislative Coordinating Council v. Stanley*, 957 P.2d 379, 392 (Kan. 1998) (quotation omitted).

We therefore must initially establish that the entity has in fact been created by statute as an administrative tribunal of the state (or by a political subdivision with statutory power to create the tribunal). We must next determine what specific adjudicative powers the legislature has authorized. *Cf. Hartman v. State Corp. Comm'n*, 529 P.2d 134, 141 (Kan. 1974) (stating that "an administrative

-13-

regulation which goes beyond or conflicts with legislative authorization is void”). “The jurisdiction of administrative agencies is usually defined in terms of specified substantive legal provisions. . . . These limitations on authority of the tribunal should carry corresponding limitations on the scope of ‘claim’ for purposes of the rule of claim preclusion.” *Parker*, 778 P.2d at 392 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 83 cmt. g) (alteration in original). Thus, in this case we decide whether either the grievance committee or the Board has been given statutory authority to decide the private rights of the parties in a tort action, keeping in mind that claims implicating private legal rights like those involved in this tort action should not readily be assumed to fall within the province of administrative agencies. *See generally Commodity Futures Trading Comm’n v. Schor*, 478 U.S. 833, 853 (1986) (“private, common law rights were historically the types of matters subject to resolution by Article III courts”).

Further, we must consider whether the particular decision is a quasi-judicial decision. *See Hartman*, 529 P.2d at 141 (stating that “[a]dministrative action other than adjudication cannot be res judicata”) (quotation omitted); *Leavenworth County Comm’rs v. Brewer*, 9 Kan. 307, 1872 WL 629, at *8 (Kan. 1872) (discussing difference between quasi-judicial and managerial decisions).

If the agency meets all these requirements, we must then examine whether there are statutory procedural protections in place that satisfy due process,

including adjudication by an impartial and disinterested decision maker. *See Murphy*, 837 P.2d at 1321 (noting that application of preclusion doctrines requires "sufficient due process protections"). It is with these principles in mind that we conduct our analysis.

## A. Collateral estoppel.

Except in cases brought pursuant to federal anti-discrimination laws, federal courts generally must give a state agency's fact finding "the same preclusive effect to which it would be entitled in the State's courts" when the "state agency acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 796, 799 (1986) (quotation omitted, alteration in original). Mr. Woodard argues that the grievance committee's "belief" that he had not been terminated in retaliation for whistle-blowing (which the district court characterized as a "finding") cannot be given collateral estoppel effect in his suit for retaliation because the grievance committee was not acting in a judicial capacity and the grievance process did not afford procedural protections similar to court proceedings. We agree.

**1. The grievance committee is an advisory, and not an adjudicative, committee.** The power to issue a legally-binding finding of fact implicates the power to adjudicate. *See id.* at 799. The Board cited no statute, either in its

summary judgment pleadings or on appeal to this court, to indicate that Kansas has created state administrative agencies charged with hearing grievances for county employees or administrative tribunals to decide state-law retaliatory discharge claims, or that the state has given the Board authority to do so. *Cf. Thompson* , 493 P.2d at 1263 (noting that state Civil Service Board is empowered by statute to hear appeals of dismissed state employees and determine the reasonableness of the dismissal). The Board simply stated that "[u]nder its broad 'home rule' powers, [it] had authority to establish and utilize grievance procedures to hear its employees' complaints regarding employment-related decisions." Appellee's App. at 28 (citing Kan. Stat. Ann. §§ 19-101 through 19-103). The district court did not discuss where, if its findings were supposed to have independent legal significance in Kansas courts, the grievance committee or the Board obtained state authority to act in a quasi-judicial capacity in regard to county employee terminations. *See generally Thompson,* 493 P.2d at 1263 (indicating that for act to be "quasi-judicial," board must be statutorily empowered to act in a judicial manner).

As mentioned above, the grievance committee was created by the Board as part of an "internal grievance procedure," *see* Appellee's App. at 115 (county grievance policy), not by the state as a quasi-judicial administrative agency or tribunal. In fact, its findings are merely advisory. *See id.* at 116 ("No

-16-

disciplinary action shall take effect until the Committee reports its findings to the Commission, [i.e. the Board] and the Commission has adopted the findings of the Committee.").

While it is certainly true that, under its home-rule authority to perform powers of local administration, *see* Kan. Stat. Ann. § 19-101a, the Board could appoint an advisory committee to assist it in deciding whether to support one of its department's termination or disciplinary decisions, the statutes setting forth the powers of county boards do not include authority to create sub-agencies or tribunals to adjudicate state-law causes of action against the county. *See* Kan. Stat. Ann. § 19-101 (listing specific powers of county, including to sue and be sued, to purchase, hold, and sell property for county use and make orders respecting the use of that property, to make contracts in relation to county property and concerns, to exercise powers of home rule to determine their local affairs, and to exercise "such other and further powers as may be especially conferred by law"); Kan. Stat. Ann.§ 19-212 (describing powers of board of county commissioners); Kan. Stat. Ann. § 19-101a(a)(3) (providing that boards "may not affect the courts located therein"). Under Kansas law outlined earlier, only the state may create administrative tribunals that conclusively resolve issues of state law, and Kansas has not created one for this purpose. The grievance committee's "findings" (which in fact were no more than informal statements of

belief) were not made with adjudicatory authority and therefore are not entitled to collateral estoppel effect.

**2. There was no independent decision maker.** There is also another reason why the committee's "findings" are not entitled to preclusive effect.

> [D]ue process requires a neutral and detached judge in the first instance, and the command is no different when a legislature delegates adjudicative functions to a private party. That officers acting in a judicial or quasi-judicial capacity are disqualified by their interest in the controversy to be decided is, of course, the general rule.

*Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 617 (1993) (quotations and citations omitted). The internal grievance committee is nothing more than an agent of the Board. Although the district court noted that "members of the grievance committee were not from the same department as Woodard," and stated that the committee "arrived at an independent judgment as to Woodard's termination," *Woodard*, 108 F. Supp. 2d at 1190, 1192, the members still were all Board-appointed county employees ultimately dependent upon the Board and the county for their employment. The county employees/agents were not neutral and detached "judges" because their employer was a party to the proceeding. The "findings" therefore may not be given collateral estoppel effect.

**B. Res Judicata.**

The district court also applied the doctrine of res judicata to bar Mr. Woodard's tort claim, holding that the Board's decision to uphold the termination constituted a "judgment on the merits." *Woodard*, 108 F. Supp. 2d at 1192. The Kansas Supreme Court has held that res judicata is "intrinsically a judicial doctrine not to be applied unwittingly to legislative or executive activities which administrative bodies are sometimes empowered to exercise in addition to the judicial one." *Neunzig*, 722 P.2d at 573. Further, Kansas applies the doctrine only when the administrative proceedings provide procedural protections similar to court proceedings. *Id.* at 574. "'The starting point in drawing the line is the observation that res judicata applies when what the agency does resembles what a trial court does.'" *Id.* (quoting 4 Davis, Administrative Law Treatise § 21:3 (2d ed. 1983)); *see generally* RESTATEMENT (SECOND) OF JUDGMENTS § 83 cmt. b ("In the performance of adjudicative functions, . . . administrative agencies are generally required by law to employ procedures substantially similar to those used in courts.").

For the same reasons that county board decisions to uphold terminations are not quasi-judicial for jurisdictional purposes, they are not quasi-judicial for the purpose of applying res judicata: they do not represent decisions arising from the proper exercise of adjudicatory authority. Examination of the applicable Kansas

statutes, case law, and the procedures followed by the Board corroborate that conclusion.

The power to render a judgment also presupposes the power to adjudicate. *See Thompson*, 493 P.2d at 1253. As discussed above, the Board has not supplied any statutory support for its assertion that it is authorized to adjudicate termination disputes between the county and its employees. [3] The Board is simply an agent of the county.

Kansas courts have long held that when a board of county commissioners denies a county employee's claim against the county, the act of denying the claim is not a quasi-judicial act.

> [W]hen they allow or disallow a claim against their county--against their principal--they do not act in a judicial capacity. They are not then a court, acting impartially between two contending parties, but they are simply the agents of one of the parties, and acting for such party.

---

[3] In contrast, Kansas has created independent and impartial state administrative tribunals to adjudicate employment controversies between state employees and the state, and tenured public school teachers and the city or counties that employ them. *See* Kan. Stat. Ann. § 75-2925 (creating the Kansas Civil Service Board (CSB) under the Kansas Civil Service Act to administratively review terminations or discipline of state public employees at the employees' request); section 75-2929d(a) (giving CSB authority to hear appeals from terminations of state public employment); section 75-2949 (setting procedures for termination, right to appeal termination decision to CSB); *cf. also* Kan. Stat. Ann. § 72-5438 (providing for due process hearing before independent hearing officer after termination or disciplinary decisions involving public school teachers).

*Brewer* , 9 Kan. 307, 1872 WL 629, at *8.  Similarly, Kansas courts have held that a county board of education's final decision to breach an employment contract with a non-tenured teacher was an executive, not a quasi-judicial, decision. *Speece v. Unified Sch. Dist. No. 420* , 626 P.2d 1202, 1205 (Kan. Ct. App. 1981) (holding that employee could bring independent action for breach of employment contract despite adverse decision by board).  "City and county governing bodies disallow both tort and contract claims at almost every meeting. . . .  Thus, a governing body's action may set the stage for potential lawsuits, but it has never been thought that a disappointed claimant could only appeal from the adverse decision."  *Id.*

That is not to say that the Board has not been given any quasi-judicial functions by the Kansas legislature.  There are instances in which, in the process of carrying out its statutory responsibilities, Kansas county boards must make quasi-judicial decisions.  One example of a quasi-judicial county board decision is the one made after the board holds statutorily mandated hearings to determine whether annexation of county land by a city will hinder or prevent proper growth and development of an area.  *See* Kan. Stat. Ann. §§ 12-520c, 12-521; *City of Topeka v. Shawnee County Bd. of County Comm'rs* , 845 P.2d 663, 669-70 (Kan. 1993).  Another example is when, after statutory proceedings brought by third parties, a county board determines as "fence viewers" whether a partition

fence should be repaired or rebuilt. *See* Kan. Stat. Ann. §§ 29-201, 29-302, 29-304, 29-403; *Kaplan*, 3 P.3d at 1273 (noting that county board's decision after sitting as "fence viewers" was quasi-judicial).

The Board was not acting in a quasi-judicial capacity when it upheld Mr. Woodard's termination. *See Concannon v. Bd. of County Comm'rs*, 626 P.2d 798, 799-800 (Kan. Ct. App. 1981) (holding that board's rejection of employee's claim for compensation was not quasi-judicial decision because board was simply authorized agent of county acting on the county's behalf). Because the Board's decision did not constitute an adjudication, and "[a]dministrative action other than adjudication cannot be res judicata," *Hartman*, 529 P.2d at 141 (quotation omitted), the district court improperly applied res judicata to foreclose Mr. Woodard's suit.

**C. Kansas case law does not support applying preclusion doctrines in this case.**

No cases cited by the district court or by the appellee support a contrary view. *See Parker*, 778 P.2d at 391-92 (holding that res judicata did not bar litigation of state-law discrimination claims after both Kansas CSB and Kansas Commission on Civil Rights had ruled adversely to plaintiff on issue of discrimination); *Gutierrez v. Bd. of County Comm'rs*, 791 F. Supp. 1529, 1533 (D. Kan. 1992) (holding, in case alleging discrimination and retaliation that

Kansas courts probably would not apply res judicata principles to findings made by state unemployment compensation referee and affirmed on appeal by the Kansas Employment Security Board of Review).

The cases cited by appellee that do apply preclusion principles to administrative agency decisions bear the hallmarks discussed above: a final, quasi-judicial decision rendered by a state-created administrative tribunal that is not a party to the dispute and that has statutory authority to decide the particular issue in a proceeding with due process protections. *See Neunzig*, 722 P.2d at 571-74 (applying res judicata to final decision of independent hearing committee created by state statute as tribunal to hear issues involving teacher termination; decision was subject to review by court); *Murphy*, 837 P.2d at 1321-22 (applying collateral estoppel to finding of state worker's compensation judge statutorily authorized to determine whether plaintiff was an employee of defendant).

Internal personnel grievance proceedings are intended only to give the county an opportunity to take a hard look at its agent's actions and to get a preview of the aggrieved employee's evidence so that it may discover and correct erroneous decisions before having to litigate a state-law breach of contract or tort suit in court before an independent decision maker. The principles of res judicata and collateral estoppel do not apply in this case and the district court's decision must be reversed.

**D. Alternative arguments for dismissal or affirmance.**

The Board raises two additional alternative arguments in support of dismissing the case or affirming the district court's grant of summary judgment. We address each argument in turn.

**1.** *Rooker-Feldman* **doctrine is inapplicable.**

First, the Board argues that Mr. Woodard's claims should be dismissed pursuant to an extension of the *Rooker-Feldman* doctrine, which precludes federal review of state-court judgments. This argument was rejected by the district court, *see Woodard*, 108 F. Supp. 2d at 1187-1189, and the Board did not cross-appeal from the court's adverse ruling. *See Hutchinson v. Pfeil*, 208 F.3d 1180, 1186 (10th Cir. 2000) ("A party may not circumvent the obligation to cross-appeal an adverse decision simply by rearguing the matter in connection with another, favorable ruling."); *Trigalet v. Young*, 54 F.3d 645, 647 n.3 (10th Cir. 1995). Even if the ruling had been properly appealed from, however, we would find the Board's argument to be without merit.

First, the Board's request that we extend *Rooker-Feldman* to bar federal jurisdiction over Mr. Woodard's retaliation claim fails for lack of a "judgment" rendered by a statutorily authorized administrative tribunal. There is simply no "judgment" here. Further, as the district court correctly noted, the

-24-

*Rooker-Feldman* doctrine applies only to judicial proceedings. *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983).

**2. Genuine issues of material fact preclude summary judgment.**

Next, the Board asserts that summary judgment should be upheld because there is an absence of evidence from which a reasonable jury could find that the Board terminated Mr. Woodard's employment in retaliation for whistle-blowing activities. This issue was raised before, but not ruled on, by the district court. Generally we do not consider issues on appeal that have not been decided in the district court. *See R. Eric Peterson Constr. Co. v. Quintek, Inc. (In re R. Eric Peterson Constr. Co.)*, 951 F.2d 1175, 1182 (10th Cir. 1991). However, because our review is de novo and the stipulated facts and record summarized in part I of our order and judgment provide ample evidence establishing that a genuine issue of material fact exists as to why the Board decided to terminate Mr. Woodard, we conclude that summary judgment is not appropriate. We deny the Board's request to affirm the district court on alternative grounds.

The judgment of the United States District Court for the District of Kansas is **REVERSED** and **REMANDED** to the district court for further proceedings consistent with this order and judgment.

Entered for the Court


David M. Ebel
Circuit Judge